# Hodgson *versus* Millward et al.

1. By the State and Federal Constitutions, all judicial power is vested in the courts, from whence alone process may issue to deprive a person of life, liberty and property.

2. Warrants issued by the courts are a shield to the officers who serve them, but an arrest on an order or request of a person not a judicial officer, without an urgent emergency to justify the seizure, will afford him no such protection.

3. The act of Congress of the 6th August, 1861, requiring the President in certain cases to cause certain property "to be seized, confiscated, and condemned," does not authorize it to be done except by due process of law.

5. Compensation is the measure of redress for the legal wrong, but for the moral wrong, the recklessness of the act, the personal malice with which it is done, the violence and outrage attending it, reasonable exemplary damages will be allowed by the jury.

At NISI PRIUS.

The charge of the court was delivered by

LOWRIE, C. J.—It is not at all strange that in times of national crisis and of national and popular disturbance and excitement we find ourselves forced to revert to first principles in the discussion of cases which, in ordinary times, and arising among ordinary persons, could be disposed of with accuracy and dispatch simply by a justice of the peace.

This case is one of that character. We should not think of granting it anything but the most summary treatment, were it not that it grows out of the very natural excitement that overspread the country on the breaking out of the present rebellion, and that the actors in it are important officers of the Federal Government, who claim to have acted under the authority of a law of Congress and under the special authority of the President of the United States, and in support of the Constitution and laws, and of the safety and integrity of the Union.

These circumstances are quite unusual in an action of trespass for taking the property of a citizen, and they seem to us to justify the parties in expecting for the case a more than ordinary degree of consideration. So far as the case is ordinary, it deserves only an ordinary consideration; but so far as it involves circumstances that are unusual and extraordinary, it deserves something more. Let us consider how far these extraordinary circumstances affect the case or the law that is to be applied to it.

The rebellion is the first extraordinary element in this case; but no one can pretend that our law was changed by the mere fact of the rebellion, so far as it relates to the rights that now claim to be vindicated by us. No doubt that rebellion gave rise

[Hodgson *v.* Millward et al.]

to an immense popular excitement—that was quite natural, and inevitable; we should be more or less than men if it had not arisen. No doubt, also, that excitement gave rise to great popular mistrust and suspicion towards all who seemed to oppose or discourage its great purpose of crushing the rebellion; this, also, was quite natural and inevitable.

A very earnest loyalty is quite liable to run to an extreme that is a strain upon the law. No doubt, also, this distrust would soon be visited upon those who, for any reason, should seriously question the most summary plans for suppressing the rebellion, for when people are excited they are sure to be impatient, and censorious of all plans that do not seem to them to promise the most speedy and summary success. We are not, in such circumstances, prepared to submit to the control of the law of the land, and to those mutual concessions to general opinion that are essential to harmonious social action, and our distrusts and suspicions are very apt to breed discord among us; and we ought to expect this, and to know how to meet it consistently with social order. But we do not. By a natural law of such occasions, suspicions, slanders, oppressions and violence are sure to arise; and many things are said and done which the law of the land forbids, and which, under other circumstances, sound morality would condemn, though a liberal charity might overlook them.

But none of these circumstances can at all change the Constitution or laws of the land. The very purpose of law is to set a rule that shall remain fixed and immovable among the disturbances of society, and shall be the standard for judging them. Law does change in adaptation to the growth of a people, but if it adapted itself to all their excitements it would cease to be law. It is the quiet and steady rule by which all acts are to be judged, and all rights vindicated; and if we hold that rule with a firm hand, that trembles not with the excitements that prevail around it, we shall have no difficulty in measuring the rights that are submitted to our judgment. It is the firm, unbending rule of sober social thought, and of the common sense of quiet times, and by its standard all civil affairs must be judged, whether they fall below it, or profess to rise above it. If it yielded to excitements, it would be judged by them, instead of being their judge.

The next important element in this cause is the alleged fact that the act complained of was authorized by the President of the United States, and was executed by important Federal officers. But this element loses all its legal importance when we consider that all public functionaries in this land are *under law*, and that none, from the highest to the lowest, are above it. They, as well as we, are under the Constitution and laws of the

[Hodgson *v.* Millward et al.]

United States, and sworn to support, protect and defend them, or take them as their rule of civil and official conduct, and they and we are to be judged by them in our civil and official conduct in all official cases. The acts of the President and his subordinates are, therefore, without right, unless they are authorized by some article of the Constitution, or the laws made under it, and consistent with it. He can make no laws that can vest in him any new authority, or that can protect those who obey his unauthorized orders. He would not claim that he could.

Let us concede the maxim that circumstances alter cases, and even the law that governs cases; but let us not be misled by it. In a certain sense the law of self-defence changes according to the violence and nature of the attack or the danger; that is, the law allows self-defence, and allows that it shall be so conducted that it shall be adequate to the emergency, according to the best judgment of the person attacked; and thus it sanctions acts that, under other circumstances, it would condemn. But then it never leaves to any one to judge finally for himself when the right of self-defence arises, or when the danger is such that the attack of self-defence may begin. The law of the land alone can settle that. He who enforces rights without the aid of law, must both prove that he has such rights by law, and that they are exposed to a danger that cannot safely await the regular forms of legal process. A man who is caught committing theft, burglary, murder, and the like, may be arrested by any one without legal process, because of the emergency; but then he must be immediately taken before some competent authority, where he may be placed in the regular road to a speedy trial; and, to justify the arrest, the crime charged must be proved.

We shall have some use of these thoughts hereafter; but the use I want to make of them now is this: The Federal and State Constitutions place the government under just such restrictions as these: It tells the government how it shall proceed in defending society and the organism against all the forms of violence, disorder, and danger to which society is exposed. It puts all its functionaries under law, so that they shall not invade the order of society, by taking their own forms and modes of protecting it. When they act without law, they must justify themselves before the law by showing an emergency that demands their act. If it be not so, then they are above law, and not under it. If they may irresponsibly declare the existence of the emergency, and also the acts which it demands of them, then, as to them, we have neither constitution nor laws.

Our Constitution was framed when the remembrance of the

[Hodgson *v.* Millward et al.]

excitements, suspicions, divisions, disloyalty and treasons of the Revolution were yet fresh in the minds of our statesmen, and under the light of all its experience, and they left no gap in it to be supplied by the fears or suspicions of excited times. It is still a sufficient rule of practice for our government, and it, better than anything else, embodies the settled and sober thought of this people. When we depart from it, we expose ourselves to the rule of force, and to incalculable divisions of opinion, of counsels and of action.

And now it is proper for me to say that I see no sufficient evidence that the President of the United States authorized the seizure complained of here. I think it entirely improbable that he did. The district attorney thinks his dispatch came from some one in the war department. This is no evidence of an order from the President, and that element is, therefore, entirely out of the case.

And all these elements being removed, the case becomes the very common one, in which it is alleged that a public officer has seized the goods of a citizen without proper warrant. It is common against both Federal and State officers. We have had many of them. On an order issued by the district attorney, the defendants, the marshal and his deputies, seized upon the office of the plaintiff's newspaper, called the *Jeffersonian*, and on all its contents, for some supposed violation of law, and afterwards the property was proceeded against for forfeiture in the United States Court, and was soon abandoned by the district attorney, and a decree was entered in favor of the defendant there, the plaintiff here.

No cause of forfeiture is shown here. The defendants rely entirely on the order of the district attorney, and on the decree of the Circuit Court for their defence. But the plaintiff here was not bound to demand his damages in that action, and may sue for them in this form; and, therefore, there is only one ground of defence that needs any special consideration. Do the defendants show a warrant issued in proper form by competent authority, that shelters them from responsibility for the act done.

What the law requires in order to justify such an act is written in the Constitution, Article 4 of the Amendments: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." A similar law is written in all our State Constitutions, and it is simply the written expression of the unwritten or customary law of the people, known to everybody, descended

[Hodgson *v.* Millward et al.]

through a long line of ancestry and of popular disturbances, and recognized by everybody in times when a quiet reason holds the control of the passions.

Another law is to be connected with this one in order that it may be seen how such warrants are to issue. It also is written in the Constitution, where it vests all judicial power in the courts established by law, and requires that no man shall be deprived of life, liberty, or property, except by due process of law. This makes the courts the only authority whence any process can issue for the trial of rights or wrongs. Warrants properly issued by them are a shield to the officer who executes them. Warrants issued by others have no further authority than is contained in the emergency on which they are founded. If the circumstances—the pressing nature of the emergency—justify the act, they justify the warrant, but not otherwise. It is not usual to call such orders warrants, and they are not properly so called. They are merely orders of a superior to a subordinate officer to do a special duty which usually he ought to do without such order.

When a great conflagration or a violent mob is raging, or a vessel is attempting to transgress the revenue laws or the laws of war, and to escape, there is no time for warrants, and the necessary work must be done without them. But then it is always done under responsibility to law through the courts of justice. If the occasion and the law of the land justify what is done, then the want of a warrant is excused.

We understand now the case we have before us. The defendants had no such warrant as is required by the Constitution. It was an order or "request," not issued by any judicial officer, and was not founded on the oath of any one, and there is no pretence that any such violent outrage on social order had been committed, and no such pressing and urgent emergency existed as to justify the seizure, without warrant, and therefore no jurisdiction is made out.

There is nothing in the act of Congress of the 6th of August, 1861, that justifies it. It requires the President, in certain cases, to cause certain property "to be seized, confiscated, and condemned;" but this means by due process of law. It is not to be done by the President himself, but by due process of law by the proper functionaries, and he is to see that they do their duty. These defendants undertook to do this act without warrant, and without any proper occasion shown to us, and therefore they are mere trespassers.

They are trespassers from the beginning to the end; and the first step in the matter being unjustified, no subsequent and unsuccessful proceeding under the act of 1862 can shelter them from liability for compensation. They would have

[Hodgson *v.* Millward et al.]

been liable for a malicious prosecution without probable cause, if the act had been under a writ apparently valid. The plaintiff is entitled to full compensation for all that he has lost by this act.

Is the plaintiff entitled to exemplary damages? Yes, in so far as their act was inspired by mere wantonness. But exemplary or punitive damages are usually allowed rather for the moral than for the legal wrong that accompanies such acts. For the legal wrong, compensation is the measure of redress. For the moral wrong, the recklessness of the act, the personal malice with which it is done, the violence and outrage attending it, for this you are authorized to allow exemplary damages; such as are reasonable under all the circumstances.

You must judge how far the defendants are guilty of any moral wrong, beyond the legal wrong, in the act complained of. It was not done on their motion or to gratify any selfish motive of theirs, but under the apparent authority of their official superiors. Moreover, they did it partly under influence of a widespread popular excitement, which was not chargeable to them. We are all liable to such influences, and very few of us, none of us, I should rather say, are able to resist them. We should not be social beings at all if we should resist them all. We naturally and rightly share in the opinions that prevail around us, and we should not be worthy of society if we did not.

And yet we are entitled to rise above common opinion if we can, and when we do, we cannot better show that we have done so than by still respecting the common opinions of society as the only opinions upon which it can act. In so far as the defendants acted under the influence of the wide-spread popular excitement, and not from mere personal motives, they are entitled to the benefit of it in mitigation of the exemplary damages you may be disposed to allow; not, however, to affect the plaintiff's right to full compensation for the actual loss sustained by him.

All that I have now said is in the exact line of the Constitution and statutes of the land, and of all decisions under them, and under the principles of the common law, many of which you have heard read; and a little while ago it would have been recognized by everybody as the plain law of the land. I am not sure that it will be so now; if the passions of men make the law, there may be some doubt about it. But if the law of the land is the sober and abiding thought of the whole people, that lives through all disorders and excitements, and survives and judges them all—the great ocean undercurrent of thought —to which waves, and storms, and tempests do not reach—then what I have said is the law still. I know of no other law for

[Hodgson *v.* Millward et al.]

this case.   This *is* the law, and the plaintiff is entitled to damages—compensative, if the defendants acted in good faith, and under a mere mistake of authority; and exemplary, if there was any bad faith, recklessness, and oppression intended in their act.

I have no further or special answer to give to the points submitted by the counsel for the defendants.   They have all been substantially answered.   The case is now in your hands, gentlemen, and I am sure you will dispose of it in such a way that, long as you may live—and I hope it may be long—you will never have reason to regret the part you have had in it. The damages you may give are of no sort of importance compared with the decision upon principles that has devolved upon me.

The jury returned a verdict of $512 in favor of the plaintiff.