## CHARLES B. FARWELL
### v.
## WILLIAM H. WARREN.

EXEMPLARY DAMAGES. Where a tenant, in possession of premises, agreed with his landlord to surrender the same immediately in case of a sale, and a party, on the faith of such assurance, bought the same for the purpose of erecting a warehouse thereon, and contracted for the building of the same, and the party in possession gave possession of a part of the lot upon which to commence excavating the earth, and promised to go out of the building in a few days, so as not to delay the work, but afterwards repudiated his agreement, and refused to leave, and the workmen removed his goods and demolished the house, so as to proceed with their work: *Held*, in an action by the tenant against the purchaser, that this was not a case for exemplary damages, if the tenant was not estopped from claiming any.

APPEAL from the Superior Court of Cook county ; the Hon. WILLIAM A. PORTER, Judge, presiding.

This was an action of trespass, brought by William H. Warren against Charles B. Farwell and Dennis Curran. The opinion of the court sufficiently presents the facts of the case.

Messrs. HITCHCOCK & DUPEE, and Mr. S. ASHTON, for the appellant.

Mr. J. HENRY TRUMAN, and Mr. J. R. DOOLITTLE, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The record in this case shows that in September, 1868, the appellant, Farwell, desired to purchase a lot in Chicago, upon which to construct a warehouse for immediate use. He applied to one Fowler, a real estate agent, and instructed him to find a suitable lot of which he could obtain immediate possession, and negotiate for its purchase. The premises de-

scribed in the declaration were, at that time, owned by one Crane, and occupied by the appellee, Warren, he living in a small house thereon used as a dwelling and machine shop, his family consisting of himself and a son sixteen years of age. Crane desired to sell, and inquiry was made as to the power to obtain immediate possession. Crane promised to see Warren, and report. He afterwards saw Warren, and told him he wanted immediate possession. Warren said that he could have it at once; that he would leave at any time. This statement was communicated to Farwell, and the purchase was thereupon consummated.

Crane states his understanding of the terms of Warren's tenancy to have been, that the latter could leave at any time, and Crane could terminate the tenancy at any time.

Before entering upon the premises, Farwell requested Fowler to see Warren, and arrange for his leaving. Fowler testified that he called upon Warren on the premises, and told him he had bought the property for Farwell, and he wanted immediately to go to work excavating for a building. That Warren said, as the street had been raised, they would have to go to work from the alley, and there was plenty of room for them to go to work, and that he wanted a day or two—two or three days—to move out, and they could go to work, and before they got half way up to his building, he would be out of the way; he would not be in the way under any circumstances. Thereupon Farwell employed Dennis Curran, a defendant with him in this suit, to superintend the erection of a building on the premises. Curran testifies that Warren pointed out the corners of the lot to him, and said he would get away right off, that he would not hinder them at all, and that Curran could begin immediately to work.

After the whole footing-stone was in, as testified to by Curran, and when it became necessary to remove the house in order that the work might progress, Warren undertook to revoke the license he had given, and served a formal notice

on Curran to stop, and demanded, through an attorney, quite a large sum of money as a condition of leaving.

Afterward, Curran, without the direction, consent or knowledge of Farwell, as testified to, in the absence of Warren, entered and removed the stock of machinists' tools and some articles of household furniture, and demolished the house. Thereupon Warren brought this action of trespass against Farwell and Curran, jointly. The jury returned a verdict of not guilty as to Curran, and of guilty as to Farwell, and assessed the damages at $8000. The court below overruled a motion for a new trial, made by the defendant Farwell, the plaintiff having entered a *remittitur* of $3000, in accordance with an intimation from the court that, unless it were done, a new trial would be granted, and the court rendered judgment on the verdict for $5000, to reverse which, defendant Farwell has appealed.

Among the errors assigned for reversal, we deem it necessary to consider but one, the refusal of the court below to give to the jury the following instructions, which were asked by the defendants, to-wit:

6th. "If the jury believe, from the evidence, that the defendant Farwell desired to purchase the premises then occupied by plaintiff; that the plaintiff, knowing said facts, assured Crane, the then owner, that he would give up possession of the same to Farwell; that he, relying upon said agreement of the plaintiff, purchased said premises for the purpose of building thereon; that thereafter, Farwell, relying on said agreement, entered into contracts for building on said premises; that, in pursuance of said agreement, said plaintiff also permitted said Farwell to take possession of a part of said premises and to do work and expend money thereon, and that plaintiff, after the above had occurred with his knowledge and consent, warned defendants off said premises, and that defendants thereafter entered into the house of said plaintiff, did no injury to the person of said plaintiff, and removed his

goods from his house, using no more force than was necessary, then they are instructed that the defendants are only liable for such damages, if any, as the evidence shows were actually sustained."

8th.  " If the jury believe, from the evidence, that the plaintiff gave defendant (Farwell) leave and license to enter upon the premises upon which plaintiff resided, and agreed to remove therefrom, and that, relying upon said license and agreement, said Farwell entered into contracts for building on said premises, and expended money in and upon the same, and took possession of a portion thereof, that, thereafter, in violation of said agreement, plaintiff refused to remove, and attempted to revoke or did revoke such license, and that thereupon, and after demand of possession by said Farwell, said defendants entered into the house of plaintiff, and removed his goods, using no more force than was necessary, then they are instructed that the defendants are only liable for actual damages which it appears by the evidence plaintiff sustained."

We think, under the evidence in this record, these instructions should have been given.  The state of facts set forth in the instructions does away with any case for exemplary damages.  The acts complained of were invited by appellee's own conduct.  The taking away the building appellee occupied, had become necessary in the course of the prosecution of the work of constructing appellant's warehouse.  Appellee had induced appellant to make a large expenditure of money, and, with a large force, enter upon the work of erecting the building by the permission of appellee, and under his assurance that he would remove.  Under such circumstances, the removal of appellee's goods was but an act which had been contemplated by the parties should be done, and which appellee ought to have done himself, in fulfillment of his agreement so to do.  The question in such case might rather seem to be, whether appellee was not estopped, by his conduct, from claiming any damages; whether it did not amount to an

implied license to do all that was done. There would be no such circumstances of wantonness or outrage as to entitle to punitive damages. Their allowance in the case supposed by the instructions, instead of being in punishment of wrong-doing, and of example to deter therefrom, would be so much in reward of appellee's faithless and wrongful conduct, and would be rather of evil example. There was ample evidence upon which to base the instructions.

Under the evidence in the record, a considerable portion of the judgment may be supposed to have been for punitive damages.

For error in refusing these instructions, without adverting to anything more, the judgment must be reversed and the cause remanded.

*Judgment reversed.*