## Mansur-Tebbetts Implement Co. v. Isaac Smith and Silas Smith.

1. PUNITIVE DAMAGES.—*When Proper*.—In order that punitive damages may be allowed, either malice, violence, oppression or wanton recklessness must mingle in the controversy. The act complained of must partake of a criminal or wanton nature. else the amount sought to be recovered must be confined to compensation alone.

2. SAME—*Consent to Invasion of Rights*.—A person can not consent to the invasion of his rights and then claim punitive damages.

3. SAME—*Instruction as to*—An instruction which keeps prominently before the jury an invitation to allow punitive damages is improper. The jury must not be invited or pressed to give damages of this character.

**Trespass to Personal Property.**—Appeal from the Circuit Court of Union County; the Hon. JOSEPH P. ROBARTS, Judge, presiding. Heard in this court at the February term, 1896. Reversed and remanded. Opinion filed June 18, 1896.

### STATEMENT OF THE CASE.

On October 2, 1893, the appellees, with Wiley Smith and Susan Smith, for the previous purchase of a threshing outfit and sawmill, gave to appellant ten promissory notes, the first seven of which were for the sum of $50 each, one each payable on the 10th day of each succeeding month thereafter, the eighth note for the sum of $47.50, payable June 10, 1894, the ninth for $616.75, payable October 1, 1894, and the tenth for $1,200, payable October 1, 1895, with interest. The first eight notes were secured by chattel mortgage upon the sawmill, saw, belts and fixtures; the ninth and tenth notes were secured by a chattel mortgage upon the same property mentioned in the first mortgage, and included the engine, separator, stacker and fixtures of the threshing outfit. The first two notes, which fell due in November and December, 1893, were paid, and a payment of $26 was credited upon the third. Each mortgage provided that the mortgagors might retain possession of the property until default, but that in the event the said property or any part

thereof should be claimed by any other person or persons at any time before payment, the mortgagee might treat such as a default, and the same should constitute such default; and if the money thereby secured or any part thereof should not be promptly paid when due and payable, then, at the option of the mortgagee, the whole should become due and payable at once.

There was a default in the payment of the remainder of the notes secured by the first mortgage, the last one of which became due June 10, 1894, and on the 30th day of said month appellant took possession of the property covered by said mortgage, by reason of said default and condition broken. Appellant at the same time took possession of the threshing outfit under the second mortgage; first, because, as alleged, another person other than the mortgagors, claimed a part of the property, to wit, the sawmill outfit, hence there was a default; second, appellees consented to the taking. On the 10th day of July, 1894, after giving the notice required by the mortgages, the property was sold in the vicinity, at public sale, for $416, which was credited upon the notes.

Appellees, with Wiley and Susan Smith, brought this suit against appellant on the 31st day of October, 1894, for the alleged trespass, which was after default in the payment of the note for $616.75, due October 1, 1894, secured by the second mortgage. The declaration charged a simple trespass for the taking of the engine, separator, stacker, belts, etc. The defendant filed five pleas : First, not guilty; second, justification, setting up the facts as above stated, and a default, in that a part of the property in the second mortgage had been taken by another person, other than the mortgagors; third, that the property was taken by the leave and license of the plaintiffs; fourth, that the plaintiffs admitted a breach in the condition of the mortgage and assented to the taking; fifth, that the plaintiffs had attempted to dispose of the property and a part thereof without the written consent of defendant, hence there was a breach of the condition of the mortgage. The court sustained a de-

murrer to the second plea, which appellant insists was error. Issue, in an informal way, was joined on the remaining pleas and trial had thereon, there being no evidence offered to sustain the fifth plea. The jury found the issues for the plaintiffs, and assessed their damages at $1,632.73. On motion for a new trial, one of the grounds therefor being a misjoinder of plaintiffs, the plaintiffs entered a cross-motion to dismiss as to Wiley Smith and Susan Smith. The court allowed the cross-motion, overruled the motion for a new trial, and entered judgment on the verdict, from which the defendant prosecuted this appeal, and discusses the errors assigned: that the court erred in sustaining a demurrer to the second plea; in giving, refusing to give, and modifying instructions; that the verdict is against the evidence and is excessive.

Karraker & Lingle, attorneys for appellant.

Dodd & Pickrell, attorneys for appellees.

Mr. Justice Sample delivered the opinion of the Court.

The court did not err in sustaining the demurrer to the second plea. The provision in the mortgage referred to, that if the property "shall be attached or claimed by another person or persons, * * * it, the appellant, may treat such act as a default on the part of mortgagors," relates to another person than a party to the instrument. The moment the mortgage was executed the mortgagee claimed the property "in the nature of a pledge and conditional sale, to become absolute in the mortgagee on condition broken. But until a forfeiture has thus accrued, the mortgagee has only a lien upon the pledge for the security of his claim against the mortgagor, and would be liable in damages if he were to sell the same or otherwise convert it to his own use." Rhines v. Phelps, 3 Gilm. 463.

The evidence in this case shows, at the most, for appellees, that while Isaac Smith did not want the property taken under the mortgage until his notes were surrendered, yet

he did not object to the delivery of the property by his engineer, Jennings, after the job of threshing was finished at Watson's, and the proof shows that Jennings did, in the absence of any agent of appellant, take the threshing outfit to Carlyle Mills. It is incredible that Jennings would have done this over the objection of his employer. In fact, the Smiths do not pretend that they did object. They objected to the work of the separator, which the evidence shows was substantially worthless. The appellees had but few jobs of threshing engaged, and their own engineer would not recommend its work to farmers, who relied on his judgment. He says: "I don't think it would have threshed more than three or four hundred bushels more until it would have fallen down." Evidently it would not pay the expenses of running the outfit, which took five or six men to operate it. In the light of this evidence, it is idle to calculate the profits of such a machine. Counsel on both sides agree "the measure of damages in such cases is the value of the right of possession until forfeiture of the condition of the mortgage, and the value of the property after payment of the mortgage debt, citing Jones on Chattel Mortgages, 3d Ed., Sec. 437.

The court in its instructions applied this rule, which, in the light of the evidence, makes it clear that the verdict for $1,632.73 is largely composed of punitive damages. The jury were instructed that if they believed from the evidence "that a trespass was committed as charged in the declaration * * * in a wanton, willful and insulting manner, and that the plaintiff has suffered any actual damage therefrom, then the jury are ordered to find exemplary damages."

This instruction in effect is repeated several times, and defendant's instructions were modified against its protest recognizing the right to give such damages. The claim for punitive damages in this way was made so strong and·kept so prominently before the jury that it amounted to an invitation to allow such damages. A jury must not be invited ·or pressed to give damages of that character. See Browning v. Jones, 52 Ill. App. 606, for collation of authorities.

The record has been read to find evidence to sustain the instruction in regard to this trespass having been committed "in a wanton, willful and insulting manner," and we are unable to do so. There was no anger manifested by any one, threats made, force used, or insults offered. The most that can be said is, that an unauthorized demand was made for the surrender of the property, to which appellees, granting all they claim, reluctantly yielded and delivered up the property, after finishing the Watson job of threshing, and made no protest at the sale. The most that can be said is, that appellees wanted their notes delivered up, as a condition of their consent, and doubtless this was largely because the separator was worthless. There is nothing in the record to show that appellee declared that appellant had no legal right to take the property, or make a demand for its surrender. They did not say, "the mortgage does not authorize you to take it." They should have known, and in law were presumed to know, as well as appellant, whether the mortgage authorized the property to be taken. They yielded to a claim that the mortgage did not warrant, and delivered up the property, making at the time of the claim the counter-claim that the notes should be surrendered, which was not complied with, whereby their right to compensating damages was preserved. But in order that punitive damages may be allowed, as repeatedly held by the Supreme Court, "either malice, violence, oppression, or wanton recklessness must mingle in the controversy. The act complained of must partake of a criminal or wanton nature, else the amount sought to be recovered must be confined to compensation." City of Chicago v. Martin, 49 Ill. 245, which case, after reviewing the authorities, cites and follows case of Kennedy v. North Mo. R. R. Co., 36 Mo. 351; T. P. & W. R. R. Co. v. Patterson, 63 Ill. 307, and cases cited. The injury complained of must be done wantonly or willfully—Miller v. Kirby, 74 Ill. 248—with a reckless disregard of rights. Becker v. Dupree, 75 Ill. 167. It is held that vindictive or exemplary damages should not be awarded in an action for the illegal seizure and asporta-

tion of plaintiff's goods when there is no evidence of wanton or malicious wrong on the part of the defendant. Engle v. Jones, 51 Mo. 316; Wannamaker v. Bowes, 36 Md. 42; Hyatt v. Adams, 16 Mich. 180.

A person can not consent to an invasion of his right, and then claim punitive damages. Farwell v. Warren, 70 Ill. 28.

It is true, a mere belief in the right to do the act complained of, or ignorance of the law, can not shield a person— Jasper v. Purnell, 67 Ill. 358; Singer Mfg. Co. v. Holdfodt, 86 Ill. 455—where there is no reasonable claim; yet, in order to justify punitive damages, the element of wantonness or reckless disregard of rights must be shown. There must not be an apparent or qualified recognition of the propriety of the act, as there was in this case, where there might well be a difference of opinion as to the legality of the claim. While the doctrine of punitive damages is recognized and firmly established in this State, yet, as said in Holmes v. Holmes, 64 Ill. 298, the courts should see to it that it is not perverted.

The word "authorized," as used in an instruction in regard to punitive damages, is criticised as being equivalent nearly to the word "entitled," which, it has been held, was error to use. W. St. L. & P. Ry. Co. v. Rector, 104 Ill. 303. While it is not believed to be the best word to use, yet its use has never been condemned so far as we are aware. It was used in the case of Hodgson v. Milward, 3 Grant's Cases, Penn., 406, with apparent approval. See Sedgwick, on the Measure of Damages, 6th Ed., notes to p. 569. This large verdict is probably attributable to the fact the threshing machine was worthless, and that the jury believed the notes should have been delivered up, which is probably true, in the light of this evidence, as a matter of fair dealing. But, as the court properly instructed them, those matters could not be considered in the way of damages in this case. That can be determined in a suit on the notes.

For the reasons stated, the judgment is reversed and the cause remanded.