JOHN R. SCHUMACHER, Respondent, v. THE SHAWHAN DISTILLERY COMPANY, et. al., Appellants.

Kansas City Court of Appeals, April 6, 1914.

1. WATERWAYS AND WATERCOURSES: Damages: Pollution of Streams. This suit was instituted against the defendants to recover damages actual and punitive for the pollution of a natural watercourse. The plaintiff owned and lived on one of the servient farms, which was below the defendants, but on the same watercourse. The defendants fed cattle and hogs from the slops of the distillery and flushed the sewage into the stream causing the plaintiff's damage. *Held*, that the evidence of plaintiff abundantly supported the charge of a joint wrong committed maliciously by all the defendants.

2. ———: ———: ———. Punitive damages may be asked and allowed in actions for torts where the injury is willful or is the result of that reckless indifference to the rights of others which is equivalent to an intentional violation of them.

Appeal from Platte Circuit Court.—*Hon. A. D. Burnes, Judge.*

AFFIRMED.

*Geo. W. Day, Jas. H. Hull and T. C. Sparks,* for appellants.

*James H. Chinn, James W. Boyd* and *Ardey Gabbert* for respondent.

JOHNSON, J.—This suit was begun in the circuit court of Platte county July 5, 1906, against The Shawhan Distillery Company, a corporation, and George H. Baker, to recover damages for the pollution of a natural water course which runs in a westerly direction over land in Weston occupied by the corporation in its business of manufacturing whisky, and thence over intermediate farms to the Missouri River. Plaintiff owned and, with his family, lived upon one of these servient farms. The stream crossed his pasture and supplied water to the live stock he kept thereon.

The petition, which was voluminous, contained two counts: In the first, actual damages were claimed for injuries inflicted upon plaintiff's .live stock by the alleged nuisance from March 1, 1905, to January 1, 1906, and in the second, both actual and punitive damages were claimed for the maintenance of the nuisance from March 1, 1906 to July 5, 1906, The second count contained additional averments that the nuisance rendered plaintiff's dwelling house uninhabitable and injured the health of his family. Among the defenses pleaded in the answer was a prescriptive right to use the stream to carry off the sewage from the distillery. A trial of the issues resulted in a verdict and judgment for plaintiff on the first count in the sum of $260 actual damages and on the second, for $210 actual and $3,000 punitive damages. A new trial was granted for the expressed reasons that the exemplary damages were excessive and that the verdict was the result of bias and prejudice. Plaintiff appealed and we affirmed the judgment on the ground that the trial judge, in granting a new

trial, had not abused the discretion vested in him by law. [See Schumacher v. Distillery Co., 142 Mo. App. 343.]

In the statement of the case we referred to a judgment plaintiff recovered in 1900, awarding him a perpetual injunction against George H. Shawhan who then owned and operated the distillery "from fouling and polluting the waters of said stream by passing the offal and refuse from said distillery into said stream in such quantities and for such a length of time as to destroy the water in said stream for ordinary purposes or for stock," and to the affirmance of that judgment on Shawhan's appeal (93 Mo. App. 573.) Further we observed in the statement of the case "that said Shawhan was cited at different times since said decree, to appear before the said Platte county circuit court to answer for contempt for disobedience of said decree and punished therefor by fine."

In our decision we rejected the defense of a prescriptive right and held that "defendants had a right to a reasonable use of the stream provided that in so using it they did not interfere with plaintiff's reasonable right to also use it. This right in defendants did not extend so far as to permit them to pollute its waters and render them unfit for plaintiff's stock, or cause the water to emit unhealthy fumes. . . as they (defendants) were not prohibited by the injunction decree, which was introduced with the intention of showing that they had disobeyed it, from using it altogether, but permitted of its use in a proper manner, the court might well have come to the conclusion under the evidence that defendants did not intend to abuse their privilege in that respect and that at the time they did not believe they were so doing."

We regarded the injunction as binding, not only upon Shawhan, the defendant in the suit, but upon the Distillery Company he afterward organized and

of which he became the president and manager and also upon Baker who fed cattle and hogs on the premises with the permission of Shawhan and to the direct profit of him and the Distillery Company. We view our decision as establishing in the law of this case the proposition that defendants, during the periods of the events in controversy, were under the legal duty of which the injunction decree fully apprised them, not to pollute the stream to the injury of the family and stock of plaintiff, and had actual knowledge that such defilement would be a wrongful and unlawful invasion of the legal rights of plaintiff.

After the case was returned to the circuit court an amended petition was filed in which Shawhan was joined as a defendant. Separate answers were filed, that of Shawhan consisting, in substance, of a specific denial of his alleged participation in the operations which are alleged to have caused the nuisance. A trial of the issues resulted in a verdict for plaintiff against all of the defendants in the sum of $250 actual damages on the first count, and $250 actual and $1000 punitive damages on the second. Separate motions for a new trial and in arrest were filed by the respective defendants and overruled, whereupon defendants separately appealed.

After its incorporation the Distillery Company owned and operated the plant which consisted of the distillery and equipment for feeding cattle and hogs on the mash or slop from which the whisky had been extracted. The slops which, under some arrangement between the company and Shawhan became his property, were run into vats or tanks and from thence into the feeding troughs as required. From 150 to 200 cattle and as many hogs were kept on the premises and fed on these slops. Baker was in charge of this livestock and procured the slops from the vats to feed the stock, and water from the distillery to clean the pens and floors and to wash the dirt and offal into the

sewer which emptied into the watercourse.    The court would not permit counsel for plaintiff, in the examination of witnesses, to go into the subject of the nature of the relationship between Baker and Shawhan and the Company, but admitted in evidence the former answers of Baker and the Company in which it was alleged that Baker and Shawhan were ''partners in feeding stock on the distillery grounds.''

It is conceded there is substantial evidence tending to show ''that Shawhan was the president and manager of the defendant The Shawhan Distillery Company, during the periods mentioned in the petition; that he had charge of the manufacture of whiskey and other liquors in the distillery plant; that he owned the slops or residuum left from the making of distilled liquors, which slops he furnished to the defendant Baker in vats near the cattle pens; that on one or two occasions during the period of time complained of in the first count of the petition, he pulled the plug of the vat containing the feed or slops fed to the cattle; and that he sometimes directed the men in charge of the feeding of the cattle at said pens.''    And counsel for the Company and Baker admit in their brief ''that the stream in question was polluted and the plaintiff damaged in some degree thereby is not open to question in this court, there being some evidence to support that finding, though the conflict even on that issue was sharp.    That the source of the pollution was the feed lot and barns on The Shawhan Distillery Company's premises is also a matter that will be taken for granted here, for the same reason.    Nothing that came direct from the distillery went into the stream.''

These admissions, combined with the issues we have pronounced *res adjudicata* leave very little room for the contention of the respective defendants that the court erred in sending the case to the jury, especially on the issue of exemplary damages.    Counsel for the executrix of the estate of Shawhan, who died

pending the appeal, argues that the second count of the petition does not allege a cause for the assessment of punitive damages against Shawhan, since it merely states that he permitted and assisted Baker to maintain the nuisance. Our understanding of the petition does not coincide with that construction. We think it very clearly charges that the Company, Shawhan and Baker were joint participants in the intentional commission of wrongful acts which each must have known would injure plaintiff.

The rule is well settled that punitive damages may be asked and allowed in actions for torts where the injury is willful or is the result of that reckless indifference to the rights of others which is equivalent to an intentional violation of them. [Lampert v. Drug Co., 238 Mo. 1. c. 419, and cases cited; Goetz v. Ambs, 27 Mo. 28; McNamara v. Transit Co., 182 Mo. 676; McMillen v. Elder, 160 Mo. App. 319; Summers v. Keller, 152 Mo. App. 626; Trauerman v. Lippincott, 39 Mo. App. 478.] We hold the second count pleaded a cause for the assessment of punitive damages.

And further we find that the evidence of plaintiff abundantly supports the charge of a joint wrong committed maliciously (we use the word in its legal sense) by all the defendants. The Company owned and operated the plant which was constructed with a view to having the slops consumed on the premises by live stock and to collecting and emptying into the stream all of the offal and filth resulting from such operation. It is in possession of the premises and was in a position to control both Baker and Shawhan in the disposition of the refuse. Instead of attempting to prevent them from injuring plaintiff it actively participated in that wrong by furnishing the feed for consumption on its own premises and water for the purpose of washing the filthy matter into the stream.

The case of Grogan v. Foundry Company, 87 Mo. 321, relied on by counsel for the Company does not

aid its position. Baker was not in exclusive posses-sion of the premises or any part of them as a lessee but was feeding the stock and washing the offal into the stream with the permission and cooperation of the owner. The Company has no just ground upon which to found its claim that Baker was the only wrongdoer nor is the position of the executrix any better. Shaw-han, as president and active manager of the Company as well as in the furtherance of his own personal in-terests in the live stock department, was in charge of the premises and not only suffered Baker to maintain the nuisance, but helped him. Indeed, there is better reason to think that his was the master mind in the commission of the wrong than that he was a helpless spectator of the wrongful acts of another. The court did not err in overruling the demurrers to the evidence, and since no other errors are assigned or appear in the record, it follows that the judgment must be affirmed.

It is so ordered. All concur.