LULA DICKENSHEET, Respondent, v. CHOUTEAU MINING COMPANY, Appellant.

Springfield Court of Appeals, April 20, 1918.

1. **HIGHWAYS: Obstruction: Right of Action: Special Injury.** Even if the road, rendered practically impassible by the flow of refuse from defendant's mine, were not a private road owned by plaintiff and other adjoining landowners, but a public road, the fact that her passage to and from her property was shut off by such wrongful act of defendant operated as a special injury to her, allowing action therefor.

2. ————: ————: **Punitive Damages: Willful Acts.** Evidence that defendant's agents and managers knew that by the flow of refuse from its mine they were damaging plaintiff's property, and, though several times notified and asked to quit, make no attempt to avert the injury, till suit brought, is evidence of injuring plaintiff's property and her rights therein willfully and in reckless disregard of such rights, to her discomfiture and annoyance, justifying awarding of punitive damages.

3. **APPEAL AND ERROR: Harmless Error: Instructions: Effect of Verdict.** Any question as to error in an instruction authorizing punitive damages, though actual damages be not found, is eliminated by the jury finding compensatory damages.

4. **TRIAL: Instruction: Cure by Others: "Authorized."** While the word "authorized," having the double meaning of permitted and required, ought not to be used in an instruction on punitive damages, where only the first meaning is permitted to be used, it is not reversible error, where in view of other instructions there was no chance for men of ordinary intelligence to derive the opinion that they had been instructed that they must award punitive damages if they found for plaintiff.

Dickensheet v. Chouteau Mining Co.

5. **DAMAGES: Punitive Damages: Instructions.** Instruction permitting punitive damages if the casting of mine water on plaintiff's land was done willfully or recklessly, "or to the discomfiture and annoyance of plaintiff," is erroneous; the latter condition going only to actual damages.

6. ———: ———: ——— **"Willful."** Instruction permitting punitive damages if the act was willful, that is, without lawful excuse," is erroneous; "willful" implying an act intentionally done, while injuring a person "without lawful excuse" is mere basis for compensatory damages.

Appeal from Greene Circuit Court.—*Hon. Arch A. Johnson*, Judge.

AFFIRMED (*Conditionally*).

*M. C. Smith* for appellant.

*Williams & Galt* for respondent.

FARRINGTON, J.—The plaintiff recovered a judgment in an action in trespass, the jury awarding $200 actual damages and $300 exemplary damages.

The defendant company was operating a lead and zinc mining plant near plaintiff's land. By the operation of the plant there was a discharge of water which contained a gray or murkish colored sediment called by the witnesses "sludge," and this was released by the defendant in a small dry branch which coursed across a private road owned by plaintiff and other landowners which afforded them a route to the public road leading to Springfield, Missouri, the city where they did their trading. This water also ran over some of plaintiff's field, and near a springhouse on her land where she kept such articles of food as must be kept cool, and the water of which spring she used for drinking, and the water containing the sludge also ran near a stock pond on the plaintiff's land. Without going into detail it is sufficient to say that this water carrying this sediment would settle in the branch and at times of heavy rains when the branch would be high from

natural causes the sediment would wash out on the road, onto plaintiff's wheat field, into the spring, and into the stock pond. At other times sludge ponds maintained by the defendant would break loose and the flood of such water would come down overflowing plaintiff's land, with the result that the private road became practically impassable for the use of which it had been put prior to the time defendant operated its mill, contaminated the spring, and stock pond, made her place and land unsightly, and greatly annoyed her in the enjoyment of her freehold. This was a nuisance and a great invasion of plaintiff's rights, a trespass on her property for which she is entitled to damages. The facts further show that this condition continued for something like eight months and that a number of times she went to the owners or managers of the defendant and requested that the nuisance be abated, and, that while they always promised they never performed; that is, plaintiff's evidence (and that we must take in this court after verdict) showed they would tell her they did not want to hurt her property or injure or damage her in any way, yet the nuisance continued until the time she brought this suit for damages. The evidence showed that it would and did require but a few hours for the defendant to so change the operation of its property to divert the overflow or surplus water which had been running down over plaintiff's land to a different channel so that at the time of the trial it no longer annoyed her. It is also shown that there was no damage occasioned to the wheat field and that the rains since the nuisance has been abated have carried off and washed away the deposit which had settled there while the nuisance continued.

It is first contended that unless an individual has sustained some special damage by reason of a public nuisance he cannot recover, citing authorities which sustain the proposition. This of course only goes to the question of the damage concerning the road. The first answer to this is that the evidence clearly shows

that this was a private road owned by the adjoining landowners providing a shorter route for them to reach the public road coming to Springfield than to go around the public road some half mile farther, and that the users of this road which the defendant's sludge rendered practically impassable were the plaintiff and those coming to and from her place, another neighbor, and possibly a third who had taken permission to use it. Besides, under the holdings of this and other courts the plaintiff's right of ingress and egress to her property having been shut off by this wrongful act of the defendant operated as a special injury to her even though the road were public road. [Charles H. Heer Dry Goods Co. v. Citizens Railway Co., 41 Mo. App. 63; Weller v. Lumber Co., 176 Mo. App. 243, 252, 161 S. W. 853.] Defendant's instruction directing that the jury could not consider any question as to the damages to the private road was therefore properly refused.

Neither is the claim that there was no evidence to justify the awarding of punitive damages warranted under the facts of this record. While the evidence of the defendant would tend to show that it was not wilfully or recklessly or maliciously doing plaintiff an injury, yet we can only look to the plaintiff's evidence as that was accepted as the fact by the jury which tried the case, and her evidence tends to show that although the defendant's agents and managers knew they were damaging her property and although she had gone to them several times notifying them of this fact and asking them to quit it, there was no attempt whatever made to avert the injury and damage that their act was continuously doing and never did they stop until this suit was brought for the damage that had been done. This is evidence of injuring plaintiff's property and her rights therein wilfully and that it was done in reckless disregard of such rights, to her discomfiture and annoyance. Therefore it was not improper to submit the question of punitive damages to the jury.

The difficult question presented is the attack made on the form of the instruction on exemplary or punitive damages, which instruction is as follows:

"If you find a verdict for plaintiff upon the foregoing considerations and if you further find and believe from the evidence that the casting of said mine water onto and across plaintiff's land by defendant was willful, that is, without lawful excuse, or that it was done in reckless disregard of plaintiff's rights or to the discomfort and annoyance which it might cause her, in the use and enjoyment of her property, then you are authorized to assess a further sum against defendants by way of punishment for such willful or reckless conduct, if any, not to exceed the sum of five hundred dollars, and in this connection you are instructed that defendant had no legal right to cast its mine water onto plaintiff's land, whether it actually damaged her or not—and it is not necessary that you should find that she has suffered any actual damages in order to authorize the finding of punitive damages, if any, under these instructions."

We may say, as to the last clause in the instruction, that the jury did give $200 compensatory damages which fact eliminates any question as to error in that clause.

The principal assualt on the instruction is that it did not leave it to the discretion of the jury to assess punitive damages because by its wording—it is contended by appellant—it did not give them the liberty to use their own discretion in giving or withholding punitive damages, and this, because, appellant argues, the word "authorized" is an equivocal word which in one sense was a direction to the jury to assess such damages. If its contention in this respect be true the instruction contained reversible error because it has been the repeated holding in this State that when an instruction is given as to punitive damages it must clearly inform the triers of the fact that the giving of such damages is a matter of their discretion. It

will be needless to cite more than one case on this subject where the subject is discussed and authorities given. [Geary v. Railroad, 173 Mo. App. 249, 251, 158 S. W. 736.]

It is interesting to note that the Supreme Court in the case of State v. Dwire, 25 Mo. 553, held that the word "authorized" is an equivocal word and should not be used where the jury are to be told they are at liberty to act, as the word might imply to them that they were required to so act. This case has never been overruled or criticised, expressly. And we take it that the discretion which must be given the jury in allowing punitive damages in civil cases must be as unentrammeled as the discretion given them in a criminal case where the law is that they are given the right to exercise their discretion.

We however find in the civil case of Paulette v. Brown, 40 Mo. 52, that an attack was made on the following instruction: "If the jury find that Thomas Tallis wilfully and knowingly swore falsely to any material matter in this case, the jury are authorized to discredit the whole of the testimony of said Tallis." The court said, speaking of the instruction in which the jury were "authorized" to discredit, that there was no invasion of the province of the jury and that nothing appeared on the face of such declaration that could lead a rational mind to suppose that it was intended as a positive demand to the jury to discredit it. And while the Dwire case is discussed and referred to therein and no criticism on the use of the word "authorized" there was made, yet there can be no other effect given to the language used by the court than that the word "authorized" as used did not invade the province of the jury by commanding them.

Turning to other jurisdictions, we find that in the case of Calder v. Southern Ry. Co., 89 B. C. 287, Ann. Cas. 1913 A, 894, the following instruction in a punitive damage case was approved where the jury were told they were authorized to find punitive damages: "The

court instructs the jury that punitive damages are not only recoverable for a wanton, highhanded, or willful invasion of plaintiff's rights, but that the jury were authorized to find punitive damages, if they believe there was a conscious disregard on the part of the defendant, its agents and servants, to do their duty, a conscious failure to observe due care, which was the proximate cause of the injury." [2 Blashfield's Instructions to Juries (2 Ed.), sec. 2630.]

"Authorized" is defined in Bacon v. Davis (Cal.), 98 Pac. 71, as meaning "empowered." In State v. Board of Commissioners (Kan.), 114 Pac. 247, it is said that the word means "to give a right to act." In Webster's Dictionary—"to clothe with authority." Century Dictionary—"to give legal power to." In People ex rel. Hilliker v. Pierce, 119 N. Y. Supp. 21, it is said that the words "authorized and empowered" are usually words of permission merely and generally have that sense when used in contracts and private affairs but when used in statutes are frequently mandatory and imperative. On the other hand, it was held in Atlanta, K. & N. R. Co. v. Gardner, 122 Ga. 82, 49 S. E. 818, 821, that the word "authorized" used in an instruction would not be equivalent to a command. In Masur Tebbetts Implement Co. v. Smith, 65 Ill. App. 319, 324, we find the word "authorized," as used in an instruction in regard to punitive damages, is criticised as being equivalent nearly to the word "entitled." "While it is not believed to be the best word to use," said the court, "yet its use has never been condemned so far as we are aware. It was used in the case of Hodgson v. Millward (Pa.), 3 Grant Cas. 406, with apparent approval." In Seeds v. Burk (Pa.), 37 Atl. 511, 513, it is said that the word implies discretion.

We know that an ordinance authorizing and empowering the mayor or marshal of a city to keep and preserve the peace is mandatory and involves a duty on the part of such officers. On the other hand, an ordinance authorizing and empowering the officers of

a city to own and operate public utilities would not be taken as mandatory but as merely giving them the right or the permission to do so in their discretion.

A word having such a pronounced double meaning ought to be used in an instruction wherein only one of the meanings of such word is proper to be used.

As to whether this is reversible error, it may be well to look to the other instructions given.

The first instruction—on the measure of damages—told the jury that if they found certain facts to exist they must assess damages in plaintiff's favor. They were also told in another instruction that before they could find the issues for the plaintiff for actual damages they must not only find that the defendant permitted the water and mud to flow on her land but must find that plaintiff was damaged. And they were told that in estimating plaintiff's punitive damages they may take into consideration her condition in life as shown by the evidence.

We might say, as was said in the case of Hauser v. Steigers, 137 Mo. App. 1. c. 570, 119 S. W. 52, where a similar proposition was being discussed, that although the instruction is not well drawn, in view of the other instructions we think there was no chance for men of ordinary intelligence to derive the opinion that they had been instructed they must award punitive damages if they found for plaintiff.

However, there are other faults apparent in this instruction on punitive damages. It is misleading in this, that it can be so read that if the casting of the mine water on and across plaintiff's land by the defendant was done to her discomfort and annoyance which it might cause her in the use and enjoyment of her property they were authorized to assess punitive damages; that is to say, if the jury should find that it was wilfully or if it was recklessly done or if to the discomfiture or annoyance of the plaintiff. The latter permission upon which punitive damages could be allowed by this instruction is one going only to the actual damages and not one going under the law to

punitive damages. Again, the instruction tells the jury that if the casting of the water on plaintiff's land by the defendant was willful, *that is, without lawful excuse*, they are authorized to assess punitive damages. The word "willful" implies that the act was intentionally done (Jennings v. Appleman, 159 Mo. App. l. c. 18, 139 S. W. 817); "wilfully" means "intentionally," "designedly;" and in legal significance, to "wilfully" wrong a person generally means to intentionally to do an act which is known or ought to be known will injure or damage some one. The basis for punitive damages is intentionally violating a known right. If it is willful it must be intentional. If it is so reckless as to utterly disregard the rights of others the law implies the willful intent. The definition in this instruction does not carry with it the idea to the jury that the act must be an intentional one insofar as it defines "willful." In fact, to injure a person "without lawful excuse" is the basis upon which compensatory damages are allowed, and if it be the ground upon which punitive damages may be allowed it would be proper in every case where compensatory damages are recovered to also permit exemplary or punitive damages. The Supreme Court in Peak v. Taubman, 251 Mo. l. c. 429, 158 S. W. 656, has adopted the following as the definition of "wilfulness:" "Wilfulness—a wrongful act, done intentionally, without just cause." [See also, Schumacher v. Distillery Co., 178 Mo. App. 361, 165 S. W. 1142; Ferguson v. Railway Co. (Mo.), 177 S. W. 616.]

The instruction in this case on punitive damages is, so badly framed that it will not meet the requirements of the law defined by Judge GRAY in the case of Geary v. Railroad, 173 Mo. App. 249, 158 S. W. 736, and we therefore hold that the complaint against this instruction is well founded.

If, within ten days from the date on which this opinion is handed down the plaintiff files with the clerk of this court a written remittitur of the punitive damages, the judgment will be affirmed; otherwise, it will

be reversed and the cause remanded. And should the case be tried again we call attention to the cases of Adams v. Railroad, 149 Mo. App. 278, 130 S. W. 48; Brennan v. Maule, 108 Mo. App. 336, 83 S. W. 283; Summers v. Keller, 152 Mo. App. 626, 133 S. W. 1180; s. c., 171 S. W. 336; Lampert v. Judge & Dolph Drug Co., 238 Mo. 409, 141 S. W. 1095; Hoagland v. Amusement Co., 170 Mo. l. c. 345, 70 S. W. 878; and Roney v. Organ, 176 Mo. App. 234, 161 S. W. 868, in connection with the last clause contained in the instruction on punitive damages. *Sturgis, P. J.,* and *Bradley, J.,* concur.