| 73 | 325 |
| 89 | 278 |

THE GEORGIA RAILROAD vs. PITTMAN.

| 73 | 325 |
| e122 | 89 |
| e122 | 90 |

1. Whether a person's capacity to earn money and labor successfully would be diminished from old age, and how much such diminution would be, depends considerably upon the character of the labor and the expectation of life of the person, and this question was fairly submitted by the court to the jury.

(a.) The act of 1878, allowing the wife to recover the full value of her husband's life in case of his homicide, is not unconstitutional or invalid; and in construing it, the judge gave the full measure of its rights to the defendant below in having the husband's support, while living, deducted from the recovery.

(b.) The first and third requests are covered by the general charge.

2. The criticisms upon the general charge made in the ninth, tenth, eleventh and thirteenth grounds of the motion for new trial are not well founded.   The distinction is clearly drawn between that negligence on the part of a person killed by a railroad train which would defeat all recovery by his widow, and that which would only defeat it in part.

(a.) There was no error in charging the jury that "if you find it your duty to find for the plaintiff, you will look to the evidence and determine from that how much you will find.   You will, in arriving at a conclusion, look to the evidence as to the age of plaintiff's husband, the probable length of his life, the amount that he earns or would probably earn during his life, and the state of his health."

(b.) Nor was there any error, after telling the jury that a book had been introduced to aid in calculations which they would make, in charging them "you can use the rules in that book, or can take any other rules or information that you possess that refer to making calculations."   In making a calculation, the jury may apply their knowledge or information of arithmetic, without its being formally introduced in evidence.

(c.) In regard to the diligence of the respective parties, the court charged fairly to both.

3. Although the court charged that if the officers of the railroad and the deceased were both at fault, the jury "would be authorized to make such reasonable deduction," yet where, in the same connection, he charged the rule of contributory negligence in the language of the statute, that "the damages shall be diminished by the jury," there was no error which requires a new trial.

4. Although the charge on the subject of the measure of damages was not as clear as it might have been, and dwelt somewhat upon the subject of annuities, yet there was no error which injured the defendant, and the court subsequently gave clearly the correct rule as to the measure of damages.

(a.) The act of 1878 (Code, §2972) clearly gives to the widow the right to recover the full value of the life of her husband for whose homicide she sues; and the jury are to determine the present value of that life.

5 There was sufficient evidence to support the verdict; nor was a verdict of $5,500.00 in favor of a widow who sued for the homicide of her husband excessive, where it appeared that the husband had an expectancy of over twenty years of life and an annual income of about $1,000.00, deductions having been made on account of contributory negligence, the effect of advancing age, and the support of the husband himself, under the charge of the court.

HALL, J., concurred specially.

February 7, 1885.

Railroads. Damages. Negligence. Laws. Charge of Court. Jury and Jurors. Diligence. Verdict. Husband and Wife. Before Judge DORSEY. City Court of Atlanta. December Term, 1883.

Mrs. Nancy E. Pittman brought case against the Georgia Railroad to recover for the homicide of her husband. On the trial, the evidence on behalf of the plaintiff was, in brief, as follows : Pittman, the deceased, was employed by the Western and Atlantic Railroad, and his business was to look after freight delivered to the Georgia Railroad, and to take down a memorandum of the numbers and seals of the cars. He was generally a sober, industrious man, earning a salary of $60.00 per month, and was frequently engaged in trading, so that his income was about $1,200.00

per annum. He was economical, and his own support did not cost more than $200 or $250 a year. He was forty-four years old at the date of his death. The numbers were somewhat high on the sides of the cars, and the ground was slightly depressed between the tracks, there being several tracks running about that point. It was common to step back on another track, if vacant, get the numbers of the cars, and then go up and examine the sea's. While doing this, deceased was run over by defendant's train, and died from the effects. The tracks at that point were about four or five feet apart. One witness testified that he never knew the deceased to be drunk, and only one time in twenty-five years to have the appearance of drinking. Two others swore that he did not show signs of being under the influence of liquor shortly before and at the time of the injury; and one stated that after the injury the doctor who was summoned furnished some whisky, and recommended that he drink it, but he refused it. Other trains were moving about in the railroad yard that day and every day, but not just at that time and place. One engine was not far away. The engineer testified that there were cars between him and the place of the injury, and that he did not remember hearing the engine-bell ring, but heard hallooing after the injury, and saw the crowd running down the track. Tables of life expectancy were introduced.

The evidence for the defendant was, in brief, as follows: The engine which caused the injury was engaged in shifting cars. It went up one track and came backing down another at a speed of about two and a half or three miles an hour. When it had gone about fifteen or twenty feet, the fireman looked over the tender and saw Pittman making entries in his book and standing on the track with his back partly turned towards the engine, at a distance of about two and a half car-lengths (a car length being about thirty to thirty-three feet). The fireman shouted, "Look out!" two or three times, and seeing that it did not seem

to draw Pittman's attention, stepped back and pulled the bell-rope, ringing the bell. He then went to the other side of the engine to see if Pittman had left the track, and not seeing him, returned to his position and found that he had been hurt. The engineer did not slacken the speed of the engine when the fireman hallooed and rang the bell, but any one would have had time to leave the track after the bell rang, if he had paid attention to it. There were steam-brakes on the engine, by which it could have been stopped in five or six feet at the speed at which it was running. There was a conductor whose duty it was to make up the train. He was not with the engine at the time of the injury, but gave instructions to the train-hand, as was very often done. One witness· for the defendant testified that he was engaged on behalf of the Georgia Railroad in the same position as Pittman occupied with the Western and Atlantic Railroad, and was at work along with him just before the accident; that Pittman was so drunk that he could not walk along a broad plank without staggering from side to side; that he urged Pittman to come out from between the tracks, told him that the engine was standing very near, and that they were pulling backwards and forwards all the time, and that the witness thought he had better step out on the other side until the engine got out, and then come back and get the seals on that side; that Pittman continued to take down the numbers of the cars; that the witness was afraid the engine was going to "pull down," told Pittman that he had better get out, and took hold of his arm to urge him out; that Pittman pulled away, saying, " I can take care of myself;" that the witness said, " I am going out, and you can go if you like," and walked around the car, thinking Pittman was behind him; that he heard the bell ring, looked and did not see Pittman, heard some one hallooing, and found that Pittman was hurt.

The jury found for the plaintiff $5,500.00. The defendant moved for a new trial on seventeen grounds, the sub-

stance of which are stated in the decision, in the divisions where they are discussed. The motion was overruled, and defendant excepted.

Jos. B. Cumming; Hillyer & Bro., for plaintiff in error.

Hopkins & Glenn, for defendant.

Jackson, Chief Justice.

This action was brought by Mrs. Pittman, defendant in error, against the Georgia Railroad Company, for the death of her husband caused by the running of a switch engine and cars in the yard of the company. Pittman was an employé of the Western and Atlantic Railroad Company, and it was his duty as such employé to be in the yard of the Georgia Company to take the numbers of cars of the company he served, and report them at the office of the State or Western and Atlantic road. The jury returned a verdict of fifty-five hundred dollars, and on the refusal to grant a new trial by the court, the Georgia Company excepted, and assigns for error that refusal on the grounds taken in the motion for the new trial.

There are many grounds alleged in the motion, but they may be considered under three heads—refusal to charge written requests, erroneous charges and illegality and excessiveness of the verdict.

1. The first request is, in effect, that the wife cannot recover the full value of her husband's life, but there must be a deduction for what the husband, if alive, would have spent on himself, and also a deduction on account of his capacity to labor as age advanced; the second is, that the act of 1878, so far as it undertakes to give her more than the support, or its equivalent, which she would have derived from him alive, is unconstitutional; and the third is, tha', in case the jury found applicable the doctrine of apportionment of damages, then damages would be diminished in proportion to the amount of default attributable to the husband.

The first and third requests appear to us to be substantially covered in the general charge. It is complained that the first is modified too much, because it is alleged that the judge left it to the jury whether a person's capacity to earn money and labor successfully would be diminished with old age. We are of the opinion that it does depend a good deal upon the character of labor and the expectation of life, whether that capacity would be diminished, and how much. So far as the plaintiff's business of taking the numbers of cars, making a memorandum of them in a book and reporting it, is concerned, he would last longer probably than one in more active and harder physical labor would retain the capacity to work; and his trading capacity, which seems from the evidence to have increased his salary from the company he served, would also endure longer than the capacity for hard labor. It is very questionable, to say the most for the plaintiff in error, whether a better mode of settling such questions could be desired than by referring them to the jury, under the facts of each case, in respect to the calling and sort of labor the deceased followed. On this subject, the court said in the general charge: " I further charge you, gentlemen, that, in making this calculation as to the amount plaintiff would be entitled to recover, . . . that you would have the right, and it would be proper for you to consider whether or not the capacity of the plaintiff's husband to labor and earn money would have, by reason of advancing years, decreased, and if you believe under the evidence that it would have decreased in the same proportion as you believe his capacity to labor and earn money would have diminished, in the same proportion would it be proper and right that your verdict and finding would be diminished;" and in another place, the judge repeated the instruction in these words: " If you believe from the evidence that the capacity of plaintiff's husband would have decreased by reason of advancing years, then it would be your duty to diminish the amount that you may find for the plaintiff." It strikes us

that the charge puts the point fairly before the jury under the facts of the case.

The third request is fully given in the general charge.

The second, relating to the unconstitutionality of the act of 1878, allowing the wife to recover the full value of her husband's life, should not have been given. We see nothing unconstitutional or invalid in the act. And in construing it, the judge gave the full measure of its rights to the plaintiff in error in having the husband's support, while living, deducted from the recovery.

2. The various charges excepted to in the 9th, 10th, 11th and 13th grounds are not set out in those grounds, but the errors assigned are criticisms upon, and deductions from, the general charge, wherein it deals with particular subject-matters. On comparing them with the general charge, we do not see that they amount to much. The distinction is clearly drawn between that negligence which, on the part of plaintiff's husband, would defeat all recovery, and that which would only defeat it in part. In the one case, his negligence must have caused the disaster itself alone; in the other, it did not alone cause it, but the company's default, and his negligence, together did the work. In the first case, the judge instructed the jury that there could be no recovery; in the second, that there might be, but that it was the duty of the jury to diminish damages in proportion to the negligence of the husband. Substantially, these views are clearly given to the jury, thus disposing of the criticism in the 9th ground.

In reference to the criticism in the 10th ground, it is well to let the charge speak for itself. The complaint is that the judge permitted the jury to go outside of the evidence in respect to duration of life, capacity to labor, etc. The court said, " If you find it your duty to find for the plaintiff, you will look to the evidence and determine from that how much you will find. You will, in arriving at a conclusion, look to the evidence as to the age of plaintiff's husband, the probable length of his life, the amount that

he earns or would probably earn during his life, and the state of his health." We are unable to see a particle of justification for the criticism in this portion of the charge, and the plaintiff in error leaves us to hunt up the particular part criticised. This cannot be the part referred to. Perhaps it is another part, where the judge tells the jury that a book has been introduced to aid in calculations which they would make, wherein he told them that they need not confine themselves to that book, but said, " You can use the rules in that book, or can take any other rules or information that you may possess, that refers to making calculations," etc. Surely the jury, in making a calculation, may apply their knowledge or information of arithmetic without its being formally introduced in evidence. Nor can we find in a careful reading of the charge any just ground for the 10th ground.

In regard to the diligence of the respective parties, the court, it strikes us, was fair to both parties, and there is nothing in the 11th criticism. As before remarked, we think that the charge does distinguish between negligence which caused and that which contributed only to the injury, and there is nothing in the 13th ground.

3. The error alleged in the 12th ground struck us with some force during the argument, but on examination of the whole charge, it disappears. The point made is that the court instructed the jury that if the officers of the company were at fault and the husband at fault, they "would be authorized to make such reasonable deduction, if you believe both parties were at fault, as you may see proper, from the amount of damages that you may find in the case." The point is that the statute declares, Code, §3034, " If the complainant and the agents of the company are both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of default attributable to him ;" and that therefore the court merely authorized the jury to do what the statute made imperative upon them.

But the full charge does tell the jury what the law is, a few paragraphs before this excepted to. It declares to them, "If the complainant, and in this case the wife stands in the stead of the husband, so far as recovery is concerned; if the deceased in this case and the agents of the company are both at fault, the plaintiff may recover, but the damages shall be diminished by the jury in proportion to the amount of fault attributable to deceased. Now, gentlemen, apply this law to the evidence in the case. If you believe from the evidence that the injury to deceased was done by his own consent, or caused by his own negligence, then the plaintiff cannot recover. Nor could the plaintiff recover, if the deceased could have avoided the consequences to himself by the exercise of ordinary care. But, gentlemen of the jury, if you believe," etc., concluding with the clause excepted to. So that the court laid down the law to the jury just as it is in the statute, and told them to apply it to the facts, and then concludes in the language usual among circuit judges, for fear of expressing or intimating an opinion on facts to the jury, "You would be authorized," etc. Having given them the law, its imperative requirement, as their authority, the judge then adds, "You are authorized," etc., meaning, of course, "You are authorized by this law just given you." We cannot see how it hurt plaintiff in error by any misconception which the jury could have had of this entire portion of the charge, taken altogether.

4. The fourteenth and fifteenth grounds attack the charge in respect to the measure of damages, because uncertain, and especially because the court dwelt on annuities, and did not call attention to the true mode of calculating the sum the widow should have in cash as her recovery. It must be conceded that the charge is not so clear on this subject as is desirable; and the criticism of the very able counsel for the plaintiff in error is founded on more truth and strength than elsewhere in the numerous exceptions

taken. The charge on the subject is as follows: " Now, gentlemen of the jury, as has been before stated, if you shall find for the plaintiff, it would not be proper to find the amount that you may believe from the evidence that he earned each year, and then add those amounts together, and find a verdict for that sum, but it would be your duty to find the value of the annuity. That is to say, what sum paid to him now in cash would represent the yearly payments if the deceased had lived. You will perceive that any recovery that may be had would be paid now, and that you arrive at what sum you should pay him by first determining the length of time he would live, and this sum, as it would have been paid to his wife, as she would have been entitled to it yearly, it would be improper to give her the amount that you may find that he earned yearly added together. A book has been introduced in evidence to aid you in making a calculation, in order to find out the present value of the annuity. You can use the rules in that book, or you can take any other rules or information that you may possess, that refers to making calculations under the rules of law that I have given you, and from all the information, the best information you can command, find the present value of the annuity. As an illustration, and as an illustration only, if you believe from the evidence that the plaintiff is entitled to recover, suppose, for example, that she is entitled to recover on the basis of five hundred dollars, or one hundred dollars, say one hundred dollars, and yet if you find that the one hundred dollars would not be due, as an illustration, for five, eight or nine years, you should find an amount, its present value to date, as put at interest would make the one hundred dollars at the end of five, eight or nine or any other number of years you may believe from the evidence the husband of plaintiff would probably have lived."

It will thus be seen that the charge on this subject is not very clear, but the view of the court, as expressed, did not hurt the plaintiff in error. The confusion arises prin-

cipally from the use of the word annuity, rather than the sum which would produce it. It is that sum for which the suit is brought, that the plaintiff below is entitled to recover. This sum is the value of the life of deceased, which, by the plain words of the act of 1878, Code, §2972, she is entitled to recover. Nor is it a mere life estate in that sum, but the fee, so to speak, the entire interest in it for her and her heirs, and not a sum whose principal is to be exhausted at her death by encroachments upon it in the annual usufruct of its interest. The statute means the entire value of that life in plain and unmistakable words, and it was meant to remedy the rule formerly prescribed by this court that the family could only recover the value of the life to it; that is, the annual support they would get out of his labor; and on the suggestion of the confusion in the charge by Mr. Glenn on this point at its close, the judge laid down the rule of the statute, and the rule recognized by this court in *The Savannah, Florida and Western Railroad vs. Stewart*, 71 *Ga.*, 427, to-wit: "You will find the present value of the life of the plaintiff's deceased husband, whatever you may believe from the evidence that is." So that if the charge was confused before, it was confused to the detriment of the defendant in error, and was set right in the last sentence of the charge.

This disposes of the fourteenth, fifteenth and sixteenth grounds, leaving only the grounds that the verdict is contrary to the charge, the law and the evidence and is excessive.

5. It is supported by sufficient evidence to uphold it, endorsed as it is by the presiding judge. The conductor was absent and unaccounted for. The engineer failed to stop the train when the fireman cried out, "look out!" and jerked the bell. The brakeman did not tell him a man was on the track, a car-length or two before the car which was backing upon him, and thus he was negligent of human life. The agent and servant of the plaintiff in error left the man, who was killed soon after, drunk, as he thought

and swore, without warning the engineer that he was in danger, though he did warn the deceased. If drunk, he should have been the more diligent in letting the engineer know of his being in danger; if sober, he should have told that he was there, and in danger. More especially was this his duty, as he was helping the deceased in business in which both were engaged, deceased being the servant and agent of another, and he the servant and agent of the plaintiff in error.

. Therefore, the presumption of negligence which the law attaches to the plaintiff in error, so far from being rebutted, was strengthened by the evidence.

That there was contributory negligence on the part of deceased appears. Yet he was on duty, and in the line of his employment by the State Road, and on the track where the evidence shows he should have been, and there is nothing going to show that he saw or knew of the approach of the train. The strongest circumstance against him is the effort that the servant and agent of the plaintiff in error at work with him made, according to his testimony, to get him away, and the warning he gave that the train would come back on that track; but it was for the jury to criticise and scrutinize his testimony, and give it the credit they thought it entitled to, and his testimony about the drunkenness of the deceased really is subject to doubt, and contradicted by other witnesses, and casts a shadow on all he said on the stand.

The conclusion reached is that the evidence, and therefore the law, supports a verdict for the defendant in error.

Nor is the verdict excessive. The value of a husband's life to his widow, with an expectancy of over twenty years longer life, and an annual income from his work of various sorts, approaching a thousand dollars, deducting from it such contributory negligence as the jury had the right to estimate and deduct, as well as the support of himself, and taking into consideration the effect of advancing age, which the court instructed the jury they should also deduct, is

not excessive at fifty-five hundred dollars—at least, not so much so as would authorize this court to overrule the jury and court below in their estimate of it.

Judgment affirmed.