## ATLANTA, KNOXVILLE AND NORTHERN RAILWAY COMPANY *v.* GARDNER.

1. A separate count in a petition claiming damages for negligence, which alleged in general terms that the defendant was guilty of negligence, should have been striken on special demurrer setting up that it failed to set forth the particulars in which the defendant was negligent, unless the defect therein was cured by amendment.

2. On the trial of an action brought by a minor for permanent personal injuries, when no evidence was submitted in reference to the earning capacity of the plaintiff prior to the injuries, there was no measure of damages for such injuries except the enlightened consciences of impartial jurors, guided by the facts and circumstances of the particular case. A charge to this effect was not inapplicable in the present case.

3. There was no expression of opinion upon the facts of the case in charging the jury that "The duty resting by law upon all persons to exercise ordinary care to avoid the consequences of another's negligence does not arise until the danger is impending, or the circumstances are such that an ordinarily prudent man would have reason to apprehend its existence." Nor was this charge erroneous because the court failed, in the same connection, to charge that if the plaintiff could, by the exercise of ordinary care, have avoided the consequences of the defendant's negligence, there could be no recovery.

4. In a suit for damages for personal injuries, alleged to have been sustained in consequence of the negligence of the defendant, the law of contributory negligence was not involved, if the person injured did not fail to exercise ordinary care for his safety before the negligence of the defendant was either apparent or should have been apprehended by him, and could not after that time have avoided the consequences of such negligence by the exercise of ordinary care.

5. On the trial of such an action against a railway company, a charge that "Failure to exercise ordinary care on the part of the person injured, before the negligence complained of is apparent or should be reasonably apprehended, would not preclude a recovery, but would authorize a jury to diminish the damages in proportion to the fault of the person injured," did not properly present to the jury the imperative requirement of the Civil Code, § 2322, in reference to the diminution of the plaintiff's damages in such a case.

6. As Civil Code sections 2322 and 3830 involve separate and distinct defenses to cases of this character, a rule applicable to one of them alone should not be given in immediate connection with the other, without appropriate explanation. We will not say, however, that the charge complained of on this ground was necessarily so confusing to the jury as to be cause for a new trial.

7 Under the pleadings and the evidence in this case, it was erroneous not to charge the principle that if the plaintiff, by the exercise of ordinary care, could have avoided the consequences of the defendant's negligence, she could not recover, although the court was not requested to so charge by the defendant.

8. The court should not only state the contention of a party to the jury, but should also state the law applicable to such contention.

9. Charging the principle laid down in the Civil Code § 2322, that "No person shall recover damages of a railroad company for injury to him or his property" where the same "is caused by his own negligence," is not equivalent to charging the principle contained in section 3830, that "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover."

10. "On the trial of an action for personal injuries alleged to be permanent, mortality tables are not proper evidence, and instructions as to their use are inappropriate, unless there be some evidence as to the value of the plaintiff's services or capacity to earn money."

11. On the trial of such an action, complaints made by the plaintiff to her attending physician of pains in designated portions of her body were not admissible in evidence in her favor, unless made under such circumstances as to be equivalent to spontaneous and involuntary exclamations or outcries, groans, convulsive movements, and other physical manifestations of present pain and suffering.

12. Though a question propounded to a witness was irrelevant and objected to upon this ground, yet if the answer thereto was not unfavorable to the objecting party, or stated only an admissible fact, the overruling of the objection to the question was not cause for a new trial.

Argued November 14, 1904. — Decided February 1, 1905.

Action for damages.　Before Judge Gober.　Pickens superior court.　January 8, 1904.

Ruth Gardner, aged seventeen years, by her next friend Hiram L. Gardner, brought suit, in Pickens county, against the Atlanta, Knoxville & Northern Railway Company, for $15,000 as damages resulting from physical injuries alleged to have been sustained by her in consequence of the negligence of the defendant company. The petition alleged, that she "was driving a buggy," and "her route involved crossing over the defendant's railroad track upon a public crossing known as Whitfield's crossing in" Pickens county; that she "drove said buggy, in the exercise of due care, towards said crossing, and just as she was crossing over the defendant's tracks, and just as she had cleared the tracks, a freight-train of the defendant dashed upon the crossing, negligently and recklessly frightening the horse, and causing him to plunge back, and so close was the train to the vehicle that some portion of the train near the front end of it caught the buggy and horse, tore the buggy to pieces, killed the horse, and threw [her] to the ground, and greatly and permanently injured her." The petition further alleged, that "defendant negligently failed to blow the

whistle upon approaching said crossing for a distance of 400 yards, and negligently failed to check and keep checking upon approaching said crossing, so as to be able to stop in time should any person or thing be upon the crossing, and defendant negligently failed to whistle at all or to check at all, and negligently failed to keep a lookout ahead, and was negligently running said train at a speed of about 40 miles per hour, and negligently failed to exercise any sort of care in approaching said crossing." The 6th paragraph of the petition was as follows: "And for further cause of action, and by way of an additional count, plaintiff says that on the 27th day of May, 1902, at Whitfield's crossing in said county, she was injured by the running of the cars, locomotives, and other machinery of the defendant company, and the defendant failed to exercise all ordinary and reasonable care and diligence." The seventh paragraph set forth the extent and character of her physical injuries, her pain and suffering consequent thereon; that she "was a minor and an orphan, and was studying to perfect herself in the art of music, and said injuries have so disabled her that she has been unable to pursue her studies at all, and has, further, been unable to perform any kind of labor or service, either domestic or of any other character;" that "she was able to and did perform divers domestic services about the house, in the way of housekeeping and the like;" that "she was also able to sew, and assisted in sewing, and would shortly have so perfected herself in music as to be able to teach;" that "her services were of the value of $15 to $20 per month, and these have been destroyed for all the future;" that "her capacity to labor and earn money is totally destroyed;" that "doctor's and medical bills are $250;" and that "for each and all of the foregoing items of damage plaintiff sues." The defendant demurred, both generally and specially, to the plaintiff's petition. The court overruled the demurrers, to which ruling the defendant filed exceptions pendente lite. After demurring, the defendant answered the petition, admitting that it was a corporation and that the occurrence complained of happened in Pickens county, but denying all the other material allegations of the petition. Upon the trial the jury rendered a verdict in favor of the plaintiff for the sum of five thousand dollars. There was a motion for a new trial, which was overruled, and the defendant excepted, assigning error upon

the exceptions pendente lite and upon the overruling of the motion for a new trial.

*Smith, Hammond & Smith, W. T. Day*, and *Clay & Blair*, for plaintiff in error.

*Arnold & Arnold, F. C. Tate*, and *G. L. Bell*, contra.

FISH, P. J. (After stating the facts.)　1. The only demurrer insisted upon in the brief and written argument of counsel for the plaintiff in error is the special demurrer to the sixth paragraph of the petition. This demurrer was upon the ground that this paragraph set forth only the conclusion of the pleader, "without alleging wherein defendant failed to exercise all ordinary and reasonable care and diligence." This demurrer should have been sustained and this paragraph of the petition stricken. As will be seen from the above statement of facts, this paragraph began as follows: "And for further cause of action, and by way of an additional count, plaintiff says," etc.; so it is clear that this was an entirely separate and distinct count. "A count in a petition against a railway company, claiming damages for negligence, which alleges in general terms that the defendant was guilty of negligence, should be stricken on special demurrer setting up that the petition fails to set forth the particulars in which the defendant was negligent, unless the defect in the petition is cured by amendment." *Central Ry. Co.* v. *Weathers*, 120 *Ga.* 475, and cit. Whether in the present case, the refusal of the trial judge to sustain the special demurrer to this count of the petition would have been sufficient ground for reversing the judgment below need not be determined; as a new trial should have been granted upon certain other grounds in the motion therefor.

2. One ground of the motion for a new trial complains of the following charge of the court: "Where a minor has suffered a permanent injury and such minor is too young to have selected an avocation or to begin to illustrate her earning capacity, in such cases there is no measure as to the amount of damages, where such minor is entitled to recover therefor, except the enlightened consciences of impartial jurors, guided by all the facts and circumstances of the particular case." The errors assigned are: "(1) That this charge was inapplicable. (2) This charge (without qualification) gave the jury an incorrect rule as to the

measure for damages sought by plaintiff for lost time, lost capacity, lost earnings, doctors' bills, and permanent injuries. These were matters for computation under other rules, and not to be left to the consciences of jurors, however impartial." This charge was not inapplicable to the facts of the case, as shown by the evidence before the jury, and, under those facts, there was no measure of damages except the enlightened consciences of impartial jurors, guided by all the facts and circumstances of the case. The petition did not allege that the plaintiff was earning any income at the time that she was injured, nor that she had ever earned any, nor did the plaintiff undertake to sustain, by evidence, the allegations of the petition as to her earning capacity at the time she was injured. The plaintiff introduced no evidence whatever upon this subject, nor upon the subject of expenses incident to her injuries. As her case went before the jury, she was seeking to recover alone for pain and suffering and permanent injuries, without undertaking to furnish the jury, by evidence, with any standard from which to calculate the amount of diminution in her earning capacity. She did not rely upon loss of established earning capacity; for she did not offer to prove that she ever had any. The proof showed that she was seventeen years old at the time she received the injuries complained of. So the charge excepted to was applicable to the facts of the case; and the legal principle charged was in accordance with the decision of this court in *Western and Atlantic Railroad Company* v. *Young*, 81 *Ga.* 397 (4). There it was held: " For a personal injury to a child nine years of age, including deprivation of a member, the law furnishes no measure of damages other than the enlightened conscience of impartial jurors, guided by all the facts and circumstances of the particular case. Amongst the results of the injury to be considered are pain and suffering, disfigurement and mutilation of person, and impaired capacity to pursue the ordinary avocations of life at and after attainment of majority." In that case Chief Justice Bleckley said : " A brief but excellent model of a charge upon the measure of damages, where the subject of the injury was a child, will be found in *Davis* v. *The Central Railroad*, 60 *Ga.* 329." The charge here referred to and commended was as follows : " There is no known rule of law by which witnesses can give to you the amount in dollars and cents,

as the amount of injury, but this is left to the enlightened con-
science of an impartial jury. This does not mean that juries can
arbitrarily enrich one party at the expense of the other, nor that
they should act unreasonably through mere caprice. But it
authorizes you to give reasonable damages where the proof shows
that the law authorizes it. But the jury should exercise common
sense and love of justice, and, from a desire to do right, fix an
amount that will fairly compensate for the injury received."

3. Complaint was made, in the motion for a new trial, of the
following charge of the court: "The duty resting by law upon all
persons to exercise ordinary care to avoid the consequences of
another's negligence does not arise until the danger is impending,
or the circumstances are such that an ordinarily prudent man
would have reason to apprehend its existence. Failure to exer-
cise ordinary care on the part of the person injured, before the
negligence complained of is apparent or should be reasonably ap-
prehended, would not preclude a recovery, but would authorize
a jury to diminish the damages in proportion to the fault of the
person injured." While in the motion for a new trial there are
several assignments of error upon this charge, the argument here,
by counsel for the plaintiff in error, has taken a wider range than
seems to be authorized by any of these exceptions. One point
which has been much stressed is, that the court erred in charging
that the duty to exercise ordinary care to avoid the consequences
of another's negligence does not arise "until the danger is impend-
ing;" it being contended, with much force, that the duty arises
whenever such negligence is discovered, and that no danger may
be impending to the discoverer at such time, and may never be if
he then exercises ordinary care for his own safety. But none of
the assignments of error upon this charge, in the motion for a
new trial, presents the question here indicated. We will say,
however, in passing, that the language of the court which has
been thus criticised in the argument of counsel was, as we have
seen, followed and qualified by the words, "or the circumstances
are such that an ordinarily prudent man would have reason to
apprehend its existence." We do not think that there is any
merit in the exception that this charge, "without qualification
or further explanation, was calculated to mislead the jury, and
was an expression of opinion that the danger was not impending

and should not have been apprehended by the plaintiff at the time she was injured." There was no expression of opinion involved in the charge, and we do not see how the jury could have been misled into believing that there was. The failure of the court to distinctly charge the principle that the plaintiff could not recover, if by the exercise of ordinary care she could have avoided the consequences of the defendant's negligence, did not make the charge here excepted to erroneous. The failure to give this principle in charge at all has been properly excepted to in another ground of the motion, which we will hereinafter consider.

4. Another exception to this charge is based upon the second sentence thereof quoted above. This exception is: "The jury should not have been restricted to the want of ordinary care on the part of the plaintiff before the negligence of the defendant became apparent or should have been apprehended. They should have been instructed that any negligence on her part contributing to her injury would require that the recovery in her favor be diminished in proportion to the amount of default attributable to her." The sentence of the charge here excepted to follows the second headnote in *Western & Atlantic R. Co.* v. *Ferguson,* 113 *Ga.* 708, being in almost its very language. If the plaintiff did not fail to exercise ordinary care before the negligence of the defendant was existing and was apparent, or should have been reasonably apprehended by her, and, after that time, could have avoided the consequences to herself of the defendant's negligence, by the exercise of ordinary care, she was not entitled to recover at all. On the other hand, if, after she knew or ought to have apprehended the existence of the defendant's negligence, she could not by the exercise of ordinary care have avoided its consequences, then she did not by her own negligence contribute to the injuries which she sustained, and her damages should not have been diminished at all. The law of contributory negligence is not applicable to a case in which the facts show that the person injured did not fail to exercise ordinary care before the negligence of the defendant was either apparent or should have been apprehended by him, and could not after that time have avoided the consequences of such negligence by the exercise of ordinary care. This we understand to be the doctrine laid down in *Western & Atlantic Railroad Company* v. *Ferguson,* supra, where Mr. Justice

Cobb, speaking for the court, said: "From the expressions used and rulings made in the cases cited (and there are many others where similar expressions are used and similar rulings made) the rule of force with reference to the subject under investigation seems to be well settled, and may be thus stated: The duty imposed by law upon all persons to exercise ordinary care to avoid the consequences of another's negligence does not arise until the negligence of such other is existing, and is either apparent, or the circumstances are such that an ordinarily prudent person would have reason to apprehend its existence. In such cases and in such cases only does the failure to exercise ordinary care to escape the consequences of negligence entirely defeat a recovery. In other cases, that is, where the person injured by the negligence of another is at fault himself, in that he did not, before the negligence of the other became apparent, or before the time arrived when as an ordinarily prudent person it should have appeared to him that there was reason to apprehend its existence, observe that amount of care and diligence which would be exercised under like circumstances by an ordinarily prudent person, such fault or failure to exercise due care and diligence at such a time would not entirely preclude a recovery, but would authorize the jury to diminish the damages 'in proportion to the amount of default attributable to' the person injured."

5. Another exception to this charge is, that "the charge gives the jury permission to reduce the verdict for plaintiff's want of care, but does not instruct them that it shall be done;" and that "the jury should have been instructed that any fault on the part of the plaintiff would require that the damages be diminished by the jury in proportion to the amount of default attributable to her." We think this exception is well taken. The Civil Code, § 2322, provides: "If the complainant and the agents of the company are both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of default attributable to him." It is contended by counsel for defendant in error that the word "authorize," as used by the court in the expression, "but would authorize the jury to diminish the damages," etc., is equivalent to "require," and therefore that this exception is not sound. This very question was raised in *Georgia Railroad* v. *Pittman*, 73 *Ga.* 325, and it was there held, that, .

"Although the court charged that if the officers of the railroad and the deceased were both at fault, the jury 'would be authorized to make such reasonable deduction,' yet where, in the same connection, he charged the rule of contributory negligence in the language of the statute, that 'the damages shall be diminished by the jury,' there was no error which requires a new trial." In the opinion Chief Justice Jackson said: "The error alleged in the 12th ground struck us with some force during the argument, but on examination of the whole charge it disappears." Then, after stating that the point was that the court "merely authorized the jury to do what the statute made imperative upon them," and showing that the full charge did "tell the jury what the law is, a. few paragraphs before this excepted to," he concludes that as the court gave the law, "its imperative requirement, as their authority, the plaintiff in error was not hurt by the language excepted to." The question came up again in *Krogg* v. *Atlanta & West Point Railroad Company*, 77 *Ga*. 202, and it was held, that, "While in one part of the charge the judge erroneously stated that the jury would be authorized to reduce the damages if they saw proper, yet in other portions of the charge this inaccuracy was corrected, and no harm resulted from it." Judge Blandford, who delivered the opinion, said: "It is further contended that the court below committed manifest error in instructing the jury that they 'would be authorized to reduce the damages,' etc., if they see proper. We think this charge is objectionable, in that it turns the jury loose to do as they pleased, and we think the court should hold them well in hand; but we held in *Georgia Railroad* v. *Pittman*, 73 *Ga*. 325, that such a charge as this was cured by other portions of the charge in which the court confined the jury to their duty as to their finding. Immediately after the charge complained of follow two charges by the court, the same being requests of the defendants' counsel, and these requests corrected the looseness of the charge complained of; so we think no harm resulted from the charge." It will be seen that in each of these cases a charge of the court similar to the one now under review was held to be erroneous, but that the error contained therein was harmless when such instruction was modified and explained by other portions of the charge wherein the law contained in the statute was correctly given to the jury. In the present case the trial judge failed to

give the jury any other instruction whatever upon this particular subject, and so this particular instruction went before them without modification or explanation. As said by Judge Hopkins, in the Law of Personal Injuries, § 208, "The section [2322] is imperative, and the court should hold the jury to it." The jury were not held to it by the charge in the present case, as they might well have believed that while they were authorized to diminish the plaintiff's damages in proportion to her negligence, they were not required to do so.

6. The court charged the jury that "No person shall recover damages from a·railroad company for injury to himself or his property where the same is done by his consent or is caused by his own negligence." ˙This principle is laid down, in this exact language, in the Civil Code, § 2322. The court then immediately gave the instruction which we have been considering, relative to the duty to exercise ordinary care to avoid the consequences of another's negligence. One ground of the motion for a new trial is, that it was error for the court to give these different rules of law in connection with each other, without further explanation. While the court failed to charge the jury the principle contained in the Civil Code, § 3830, that, " If the plaintiff by ordinary care could have avoided the consequences to himself of the defendant's negligence, he is not entitled to recover," what the court did charge in reference to the time when the duty to exercise such care to avoid the consequences of the negligence of another arises was applicable only to the last-quoted section of the Civil Code. It has frequently been held that sections 2322 and 3830 involve separate and distinct defenses to cases of this character. For this reason, it has also been repeatedly held that to charge them in immediate connection with each other, without any explanation of their different meanings, is error. *Savannah, Florida & Western Ry. Co.* v. *Hatcher*, 118 *Ga.* 273, and cases cited. If the two sections should not be charged in immediate connection, without proper explanation, it follows that a principle which is applicable to only one of them should not, without appropriate explanation, be given in charge in immediate connection with the other. We will not say, however, that the charge complained of was, for this reason, necessarily so confusing as to be cause for a new trial.

7. Another ground of the motion for a new trial is, that the court erred in failing to charge the jury that if the plaintiff, by the exercise of ordinary care, could have avoided the consequences of the defendant's negligence, she could not recover.  Under the evidence in this case, the court should have given this principle of law in charge to the jury, and this ground of the motion alone was sufficient to require the grant of a new trial.  Upon proof of the injury by thè running of the defendant's locomotives and cars, a presumption of negligence arose against the company, and this presumption was not removed, because the company failed to show that its agents had "exercised all ordinary and reasonable care and diligence."  It failed to show that it had complied with the statutory requirements applicable to railroad trains approaching public crossings.  Consequently, as the case went before the jury, the defendant was bound to be liable to the plaintiff, to some extent, unless the evidence disclosed that the plaintiff, by the exercise of ordinary care, could have avoided the consequences to herself of the negligence of the defendant.  As the defendant contended that it was not liable at all, and relied, as it was obliged to do under such circumstances, upon the theory that the plaintiff could have avoided the consequences of its negligence, by the exercise of ordinary care, the failure of the court to charge the law upon this subject deprived the defendant of its main defense.  Counsel for the defendant in error contend that this was not an issue in the case, because the defendant's answer did not set up any contributory negligence; that it did not set up either want of ordinary care on the part of the plaintiff or negligence by the plaintiff, but merely denied the allegations in the plaintiff's petition, which simply amounts to a denial of the facts as charged, and to a denial of the negligence charged against the defendant.  The plaintiff alleged that she drove the buggy in which she was riding, in the exercise of due care, toward the railroad crossing where the collision occurred which caused her injuries; and the defendant denied this.  So, even under the pleadings, the parties were at issue upon the question of due care by the plaintiff in driving upon the railroad crossing at the time that she did.  Besides, the defendant by its plea certainly denied any liability to the plaintiff; and if the jury, from the evidence before them, could have found that, notwithstanding the negli-

gence of the defendant, the plaintiff, by the exercise of ordinary care, could have avoided the consequences to her of such negligence, the law applicable to such a state of facts was directly involved in the case, and the court should have given it in charge to the jury. In *Atlanta Railway and Power Co.* v. *Gaston*, 118 *Ga.* 418, it was held, that where the evidence was conflicting, "but there was testimony from which the jury could have found that both parties were in the exercise of ordinary care, and that the injury was the result of a casualty, it was error not to charge that the defendant could relieve itself of the statutory presumption by showing that neither party was to blame, and that the damage was the result of a pure accident." In the opinion Mr. Justice Lamar said: "But the mutual criminations and recriminations are not necessarily exhaustive of the substantial issues raised by the evidence, and as to which the jury must be instructed. Here it could have found that neither was to blame; and that being true, it was requisite to charge what would be the result of such a finding. The failure to so charge deprived the company of the benefit of a substantial defense." Of course there is no merit in the contention that the failure of the defendant to submit to the court a written request to charge the legal principle involved in this ground of the motion disposes of the ground. "Where the judge gives in charge substantially the law governing the case, if more specific instructions on any point are desired, they should be asked; but the law of the case must be given to the jury to the extent of covering the substantial issues made by the evidence, whether requested or not, or whether the attention of the court be called thereto or not; otherwise the verdict will be set aside." *Central Railroad* v. *Harris*, 76 *Ga.* 501, and cases cited; *Strickland* v. *State*, 98 *Ga.* 84; *Chattanooga R. Co.* v. *Voils*, 113 *Ga.* 361.

8. The able and ingenious counsel for the defendant in error seeks to show that the judge did give the principle in question in charge to the jury, when, in the beginning of his instructions, he stated to the jury the respective contentions of the parties. It is one thing to state what a party contends, and another and a very different thing to state the law applicable to such contention. To state to the jury, as the court did, that the defendant contended that it had not "been guilty of any neglect, and that

if the plaintiff was hurt, it was done under such circumstances that the plaintiff, by the exercise of ordinary care and diligence, could have avoided any injury, if in fact she was injured, and that therefore the defendant [was] not liable," was far from being equivalent to charging the law laid down in the Civil Code, § 3830.

9. Nor can we agree with counsel that the charging of the principle laid down in section 2322, that no person shall recover damage of a railroad company for injury to him or his property where the same is done by his consent, or is caused by his own negligence, was equivalent to charging the principle contained in section 3830. This has been expressly ruled by this court. In *Central Railroad* v. *Harris,* supra, which was a suit by a wife for the homicide of her husband, it was held, "that the defendant was entitled to have submitted to the jury both the question whether the plaintiff's husband caused the injury solely by his own negligence, and also whether, by the use of ordinary care, he could have avoided the consequences to himself caused by the defendant's negligence." In the opinion (p. 508) Chief Justice Jackson said: "The railroad company had two defenses in this case, either of which would bar any recovery by the plaintiff. One is that the plaintiff's husband caused the killing by his own negligence; the other is that the plaintiff's husband could have avoided the consequence of the company's negligence by ordinary care. The first is found in section 3034 of the Code [now section 2322]; the last in section 2972 [now section 3830]. The two defenses are not the same. They are not identical." He then points out the difference between the two. This ruling was followed, at the same term of the court, in *Central Railroad* v. *Thompson,* 76 *Ga.* 770 (9). The difference between these two sections of the code had been previously pointed out and discussed in the concurring opinion of Justices Jackson and Blandford in *Savannah, Florida & Western Ry. Co.* v. *Stewart,* 71 *Ga.* 429, where they held (p. 447) that "the two sections ought not to be construed as the same, but in pari materia as separate defenses." We have seen that even to charge these separate sections of the Civil Code in immediate connection with each other, and without explanation as to their different meanings, is erroneous.

10. Complaint is made, in the motion for a new trial, of a lengthy excerpt from the charge of the court in reference to the

Carlisle mortality table, which was introduced in evidence by the plaintiff, the assignment of error being, "that this charge was not authorized by the facts in evidence, and that it was calculated to mislead the jury." Under the decision of this court in *Macon, Dublin & Savannah Railroad Co.* v. *Moore,* 99 *Ga.* 229, instructions in reference to the mortality table and its use by the jury were erroneous. It was there held: "On the trial of an action for personal injuries alleged to be permanent, mortality tables are not proper evidence and instructions as to their use are inappropriate, unless there be some evidence as to the value of the plaintiff's services or capacity to earn money." See also *Chicago, Burlington & Quincy R. Co.* v. *Johnson,* 36 Ill. App. 564. In the present case, as we have seen, the plaintiff did not even undertake to show the value of her services or her capacity to earn money.

11. Complaint was also made, in the motion, of the refusal of the court to exclude, as hearsay, certain testimony of Dr. Earnest, a physician who attended and treated the plaintiff, and whose depositions were taken and introduced in her behalf. The testimony in question was, that the plaintiff "complained of backache and pains in her hips," and also of other physical ailments; and his statement that the evidence of some inflammatory trouble having existed consisted in the presence of some adhesions and some deposits in the broad ligaments, "and in the history given me by the patient herself of her having suffered certain pains for a considerable period past," the quoted words being the testimony objected to. The witness had not been called in by the plaintiff to examine her for the purpose of qualifying himself to testify as a witness in her behalf, nor was he called in after suit was brought, but he attended, examined, and treated her, as his patient, some months before the suit was instituted. We have devoted considerable time and investigation to the question here presented, and have examined a great number of cases in which, in one form or another, the question of the admissibility of statements of this character made by one person to another has been presented and determined. We find that practically all of the courts in which the question has arisen hold that statements of present pain and suffering, made before suit brought, by a patient to his physician who has been called in solely for the purpose of examining, advising and treating him, may be given in evidence by such physi-

cian, when called as an expert witness, as part of the facts upon which he bases his opinion as to the nature and extent of the patient's injuries or disease. As to the admissibility of statements of past pains or sensations, made by a patient to his physician, there is a decided conflict in the rulings of the courts, some holding that such statements are inadmissible, while others hold that it is admissible for the physician to testify to them when giving his opinion as an expert to the jury. The weight of outside authority, however, seems to be that statements or narratives of past pains and symptoms, made by a patient to his physician, are inadmissible. Some of the courts, impressed with the danger of opening the door of evidence for the admission of hearsay testimony, particularly in cases in which the hearsay statement may be of a self-serving nature, hold that statements of the above character, even when made by a patient to his physician, are not admissible if made after suit brought by the patient for his injuries. Others hold that they are not admissible if made to a physician or surgeon called for the sole purpose of qualifying himself to testify, as an expert, in behalf of the plaintiff in an action for damages. A few recognize no such distinction, but hold that the fact that the statements were made under such circumstances does not render them inadmissible, but is merely a circumstance to be taken into consideration by the jury in weighing the effect of such statements and the opinion of the expert based in part thereon.

While we feel some hesitancy in laying down a rule in this State which will run counter to what seems to be the rule generally, if not universally, accepted elsewhere, we have reached the conclusion that there is no sound reason for making any exception in cases of this character to the rule which excludes hearsay testimony. In *Atlanta Street Railway Company* v. *Walker*, 93 *Ga.* 462, this court held, that, " since the change in the law allowing parties to testify in their own behalf," it is not competent for a plaintiff, suing for physical injuries, to prove by his wife that subsequently to their infliction he frequently complained to her of pains and hurts resulting therefrom, and stated that he suffered a great deal." In that case the complaints were of present pain and suffering. In the opinion Chief Justice Bleckley said: " The plaintiff's wife was permitted to testify to his complaints

made in her hearing.　　She said he complained of his side a great deal ; and, being told to state all his complaints, she said his head hurt him and his side and leg ; he suffered a great deal.　　Such evidence as this, by a witness other than the wife of a party, was competent and admissible, so long as the law excluded parties from being witnesses in their own behalf, but now that they are, by statute, competent to testify, and where, as in this case, the testimony is heard from the plaintiff himself, who knew the facts of pain and suffering, his wife, whose knowledge of them was derived from hearsay, was not competent to prove complaints which were no part of the res gestæ of the injury.　　The ground on which such evidence was formerly deemed competent was the ground of necessity.　　That necessity no longer exists.　　The higher and better evidence is that of the person who has actual knowledge of the truth of the pains and other feelings to which the complaints relate."　　This ruling was followed in *Savannah R. Co.* v. *Wainwright*, 99 *Ga.* 255. This is eminently sound reasoning, and applies as well in a case in which the complaints are made to the complaining person's physician as in a case in which they are made by a husband to his wife.　　The decision in *Feagin* v. *Beasley*, 23 *Ga.* 17, which was a suit for breach of warranty of the soundness of a negro slave sold by the defendant to the plaintiff, that the representations of the negro as to his symptoms, made during his medical examination, were admissible, was made at a time when the negro, being a slave, was not competent to testify against a free white person (*Grady* v. *State*, 11 *Ga.* 253), and his representations to the physicians and others were admissible upon the ground of necessity to which Judge Bleckley refers.

The distinction between statements of pain and suffering made to a physician and such statements made to any other person, so far as admissibility in evidence is concerned, has been rejected by a number of courts, including the Supreme Court of the United States, which held that "The declarations of a party himself, to whomsoever made, are competent evidence, when confined strictly to such complaints, expressions, and exclamations as furnish evidence of a present existing pain or malady, to prove his condition, ills, pains, and symptoms, whether arising from sickness or from an injury by accident or violence.　　If made to a medical attendant, they are of more weight than if made to another person."

Northern Pacific Railroad Co. *v.* Urlin, 158 U. S. 271, 275.    In
that case the statements in question were made by the plaintiff, at
various times, to physicians who subsequently testified in his be-
half; but, as seen above, the court refused to recognize a distinc-
tion, so far as admissibility in evidence was concerned, between
statements made to medical attendants and similar statements
made to any one else.    So it is said, in Greenleaf on Evidence,
that "The representation by a sick person of the nature, symp-
toms, and effects of the malady under which he is laboring at the
time, are received as original evidence; if made to a medical at-
tendant, they are of greater weight as evidence; but, if made to
any other person, they are not on that account rejected."    1 Gr.
Ev. (16th ed.) § 162 b.    In this edition of this work the editor
thereof explains that statements of this character are not received
as original evidence, but as exceptions to the hearsay rule; and, in
his additions to the original text, he speaks of the limitation of
the admissibility of such statements to those made to an attending
physician as " unsound upon precedent, principle, and policy," and
cites the following cases in which such limitation has been repu-
diated.    Northern Pacific R. Co. *v.* Urlin, supra; Hancock Co. *v.*
Leggett, 114 Ind. 547; Chicago, S. L. & P. R. Co. *v.* Spilker, 134
Ib. 380, 392; Cleveland, C. C. & S. L. R. Co. *v.* Prewitt, Ib. 557;
Louisville, N. A. & C. R. Co. *v.* Miller, 141 Ib. 533, 559; Baltimore
& Ohio R. Co. *v.* Rambo, 116 U. S. App. 277; Bagley *v.* Mason,
69 Vt. 175; Brown *v.* Mt. Holly, Ib. 364.   In the case of Rowell
*v.* City of Lowell, 11 Gray, 420, decided when that eminent
jurist, Chief Justice Shaw, was at the head of the Supreme Court
of Massachussetts, not, only was no such distinction made, but it
was held that, "In an action to recover for personal injuries, a
surgeon who attended and prescribed for the plaintiff once, three
months after the accident, and examined the injuries again after
the action was brought, may be allowed to testify to his opinion
of the plaintiff's condition, and the lasting character of the in-
juries, derived from what he saw, but not from any statements of
the plaintiff."    The ruling of the court below, excluding the opin-
ion of the surgeon, formed " from the declarations of the patient,"
when he visited and prescribed for her before suit was brought,
" as to her then state of feeling, and the examination [he then]
made   .   .   as to the extent of the injury she was then laboring

under," was affirmed.    So we have eminent authority to sustain our view, that if complaints of a person of pain, or other physical sensations which produce discomfort or suffering, are admissible in evidence at all, there is no sound reason for distinguishing between those made to a medical attendant and those made to any one else.    This being true, under the decision of this court in *Atlanta Street Railway Company* v. *Walker*, supra, it appears to us that the testimony now in question was inadmissible.

It is true that it was held, in a later case, that "Exclamations or complaints made by a person undergoing physical examination by a physician with a view to ascertaining the. extent of his alleged injuries, and apparently made in response to manipulations of the person's body or members by the physician, are admissible in evidence, though such person was not under the treatment of this particular physician and the examination was being made solely for the purpose indicated.    Whether or not the exclamations were involuntary, or the complaints were bona fide, is for determination by the jury under all the evidence submitted." *Broyles* v. *Prisock*, 97 *Ga.* 643.    But the ruling in that case was put upon the ground that "Complaints of pain which are made apparently in response to manipulation of the person do not come within the rule which excludes hearsay and self-serving declarations, and it is not necessary, in order to render them admissible, that they should be made to a physician for the purpose of treatment.    Such complaints are regarded as manifestations of pain, as part of the res gestæ of the pain, and are not classed with mere descriptive statements."    There complaints of pain, made in response to and coincident with manipulations of the complaining person's body, were treated as being equivalent to involuntary exclamations of pain, convulsive movements of the body, flinching, or screaming when a particular portion of the body is pressed or touched, or other physical manifestations of bodily suffering.    If they had not been put upon this ground, this decision would have been clearly in conflict with the one rendered in *Atlanta Street 'Railway Company* v. *Walker*, supra, and it was upon this ground that the two cases were then distinguished.    There is, however, a still later decision of this court in which the writer participated, which we have found it hard to reconcile with the case cited from 93 *Ga.*    We refer to the

ruling in *Powell* v. *State*, 101 *Ga.* 9, where it was held: ."Evidence of pain and suffering by the accused on trial for murder, and who alleges in his defense that he was attacked and beaten by the deceased, is admissible, if confined to a reasonable period of time elapsing after the homicide; and exclamations or expressions indicating the existence of present pain and suffering, made by him on the same day of the homicide, whether given in the course of a medical examination or while describing his particular pain or trouble to another, are .entitled to go to the jury. Such complaints may or may not have probative value; but of this the jury, under the circumstances of each case, must decide." The evidence the admissibility of which was ruled upon in that case was, that the accused, when seen and examined, by a non-expert, at the jail, on the day of the homicide, had on one side of his neck a print that looked like the print of two fingers, and that " he was complaining of being sore;" that "he was just complaining of his throat being sore." It did not appear that these complaints were in the nature of involuntary exclamations indicating pain, made in response to pressure upon the throat or otherwise, but, from the report of the testimony then in question, it merely appears that "he was just complaining of his throat being sore;" and it seems to be evident that they were not made so near in point of time to the homicide as to be considered part of the res gestæ of the rencounter which resulted in the killing. So that case, but for the above-cited older, conflicting, and necessarily controlling decision, would be authority for holding that evidence as to complaints of present existing pain would be admissible, and the statement of the physician that the plaintiff complained of backache and pains in her hips would be prima facie admissible, such complaints apparently referring to pains existing at the time when the statements were made to the physician. But even this was not admissible under the ruling in the older case. The rest of the testimony objected to was clearly inadmissible, because it referred to statements by the plaintiff of past sensations and symptoms. It will be observed that in neither *Broyles* v. *Prisock* nor *Powell* v. *State* was any distinction made between complaints of pain and suffering made by a patient to his physician and such complaints made to any other person.

In an able and instructive article on " Declarations of Pain and

Suffering," in 22 Central Law Journal, 509, 514, the writer well says; "Nothing is better settled than the rule, that when a witness can be called by a party, that party will not be permitted to prove his unsworn declarations. That which a plaintiff can prove by his own sworn statements, being a competent witness, he is not permitted to prove by statements which are unsworn. His declarations a part of the res gestæ of some subject of inquiry may be proved, but otherwise they are incompetent. It is difficult to see how spoken declarations or representations of existing pain can be a part of the res gestæ of such pain. If the pain is not an act, they are not declarations accompanying an act. Nor can we regard such descriptive statements of present pain as the natural language of such pain. The greatest sufferers seldom say they suffer, for the purpose of indicating their pain. Such declarations are not admissible merely because they accompany the act of the party in submitting himself to examination; for it is the existence of the pain, of a bodily condition or sensation, not the fact that a doctor examined the person, that is the subject inquired about. This applies equally to examinations made by physicians for the purpose of treatment, or to qualify themselves to testify as expert witnesses."

12. The conductor of the train testified, in behalf of the defendant, that, upon approaching the crossing where the collision occurred, the engineer of the train gave two long and two short blasts of the whistle; and, upon cross-examination, he was asked the following question: "Did you blow at all the road crossings up and down the track oh that occasion?" This question was objected to by the defendant, upon the ground that it was irrelevant, and the objection was overruled by the court. The witness answered, "Yes, sir," but, upon the question being repeated, he answered that he did not know. In the motion for a new trial error was assigned upon this ruling of the court. The facts with reference to the blowing or non-blowing of the whistle of the locomotive of this particular train at other crossings, on that day, were clearly irrelevant to the issues on trial; but the plaintiff had the right, upon cross-examination, to test the recollection of the witness as to the blowing of the whistle at other crossings. It would have been perfectly competent to have asked the witness if he remembered whether the whistle was blown at all the other

crossings, or to have asked him if he remembered whether it was sounded at other named crossings. While it may be that the particular question propounded was in itself objectionable, the testimony which it elicited gave the defendant no legal· cause to complain of the ruling of the court. The first answer to the question was favorable to the defendant, and the fact stated in the second was merely in reference to the witness's memory.

*Judgment reversed. All the Justices concur.*